## SHERLOCK ET AL. *v.* BAINBRIDGE.

NAVIGABLE RIVER.—*Riparian Proprietor.* — *Wharf-Boat.*—*Steamboat.*— The Ohio river being a " common highway," the owner of the soil along its banks, although his title may extend to low-water mark, cannot so construct his wharf as to materially interfere with the navigation of the river. His title to the soil of the shore, or under the water, does not authorize him to obstruct, in any way, the free use of the river by the public as a highway.

Every citizen has the right to use it as such, in all its parts not occupied for the time being by others in its navigation. This right to navigate includes the right to stop when the purposes of such navigation require it, for a reasonable length of time, to ship and discharge freight and passengers.

The navigation of public rivers is governed by the same principle that is applied to other common highways. Thus, if one in navigating the river and in landing at a wharf with his steamboat should lap over an adjoining wharf-boat, without touching the wharf-boat, it would not be a trespass, and he would not be liable for damages occasioned by his boat's preventing other boats from landing at the wharf-boat, or even if his boat injured the wharf-boat, if there was no want of skill or care on his part.

Any one navigating the river has the right to land at such wharf as suits his convenience, and if in doing so the current of the river, or other circumstance, carries the stern of his boat down stream so that a portion of his boat's length lies in front of an adjoining wharf, but still in the navigable water of the river, he is but in the exercise of a legal right, and cannot be responsible for any consequential damages which may be sustained by other boats' being thereby prevented from landing at the wharf he may overlap; provided, that in thus exercising his right, he use due skill, care, and dispatch, and subject others to as little inconvenience as is possible, consistently with the exercise of his own rights. *Bainbridge* v. *Sherlock*, 29 Ind. 364, modified.

DOWNEY, J., dissents, on the ground that the opinion unnecessarily and improperly subordinates the rights of the riparian proprietor to the mere convenience of the navigator.

APPEAL from the Jefferson Circuit Court.

WORDEN, J.—This was an action by the appellee against the appellants.

The complaint contained four paragraphs, but a demurrer was sustained to the third, and it need not be noticed. The other paragraphs are as follows:

"First. The said plaintiff complains of said defendants, and says that on the 1st day of June, 1857, and on divers other days and times, between that day and the day of the commencement of this suit, the said defendants, without

leave, wrongfully entered upon a certain piece or tract of land lying and being in the city of Madison, county of Jefferson, and State of Indiana, described as follows: River block No. 5, south of Ohio street, in the city of Madison, county of Jefferson, and State of Indiana, running to low-water mark on the Ohio river, of which the plaintiff, at the date aforesaid, and at all times since, continually was, and still is, the owner; and the defendants, on the day and during the time aforesaid, continually took possession of, used, occupied, broke, and destroyed the wharf-boats of the plaintiff, then and there, during the time aforesaid, on, attached to, connected with, tied to, and belonging to, said property, by which the plaintiff was damaged to the amount of ten thousand dollars.

"Second. For second paragraph of complaint, plaintiff says that on said 1st of June, 1857, and at all times continuously from said date until the commencement of this suit, he was the owner and possessor of certain wharf-boats afloat upon the Ohio river, attached and anchored to the said real estate mentioned in the first paragraph, then and there belonging to said plaintiff, and that said defendants, during all said time at and between the periods aforesaid, were the owners of certain steamboats then navigating the Ohio river, daily passing and repassing said wharf-boats belonging to the plaintiff as aforesaid; and plaintiff avers, that on said 1st of June, 1857, and on divers other days and times between said date and the day of commencing this suit, the said defendants did run, steer, and navigate their said steamboats in, upon, and against the plaintiff's wharf-boats aforesaid, so as to break, damage, spoil, and injure said wharf-boats, and did run and steer their said steamboats unnecessarily so near to and against said wharf-boats as to throw said wharf-boats out of the water and upon the shore to which they were attached, thereby doing great damage to said wharf-boats, to the injury of the plaintiff ten thousand dollars.

"Fourth. And for fourth paragraph, plaintiff says that he is now, and has been for more than ten years last past, the

owner and occupier of the said land mentioned in the first paragraph of this complaint, which said land is bounded on the south by low-water mark on the Ohio river, and that he and those under whom he claims have for a long time, to wit, for the period of twenty years, enjoyed, as appurtenant to said land, the right and privilege of erecting and maintaining a wharf and wharf-boats on said land; and plaintiff says that on said 1st of June, 1857, and during all the time between that date and the day of the commencement of this suit, the said defendants were the owners and possessors of said steamboats in the second and third paragraphs of this complaint mentioned, and with them, by their agents and employees, navigated the Ohio river, as in said paragraphs stated, making the landings as therein stated, and that they did, with their said boats, as therein stated, unnecessarily strike against, injure and molest, lay up against the said wharf-boats of the plaintiff, and obstruct passage to and from the wharf and wharf-boats of said plaintiff, as stated in said paragraphs, to the great injury of the plaintiff; and he further states that said defendants, when making landings at the city of Madison aforesaid, landed twice every day and oftener at a wharf owned by one ———— Stout, and unnecessarily and without any cause, in making said landings twice every day and oftener, lapped over and upon the wharf-boat of the plaintiff, and for a long time at each landing did occupy the river in front of the plaintiff's wharf, and so, during the time of their landing, and when so landed, interrupt and prevent ingress to, and egress from, his said wharf-boat, to the great injury and damage of the plaintiff; and he says that said defendants, in making their landings at the times before mentioned, did strike against, break, and injure the said wharf-boat of said plaintiff and push and throw the said wharf-boat upon the dry land; and plaintiff says that by reason of defendants' so throwing and pushing his said wharf-boat upon the dry land as aforesaid, he has been compelled to pay, and did pay, large sums of money to restore the same to the water and to repair it, and he says that said

wrongs and trespasses of said defendants on the property of the plaintiff, so done and committed as aforesaid, were done purposely to injure his aforesaid property, and without any necessity whatever; and said defendants refuse to discontinue said wrongs and trespasses, but threaten to continue the same; wherefore the plaintiff prays judgment for the sum of ten thousand dollars, and furthermore prays that the defendants may be enjoined from injuring the plaintiff's property as aforesaid, by their repeated daily trespasses as aforesaid, and that they be required so to use their property and enjoy all their rights and privileges as not to trespass in manner aforesaid, upon the property of the plaintiff, and for all proper relief."

To this complaint a general denial was filed, as well as other pleadings not necessary to be noticed in this opinion; and the cause was tried by a jury, who returned a verdict for the plaintiff for the sum of five thousand dollars, on which judgment was rendered; a motion for a new, trial, made by the defendants, having been overruled, and exception taken.

It may be gathered from the evidence, that next above the plaintiff's wharf, that is, up the river, there is a street called West street, sixty feet in width; and next above West street is another wharf, called Roe's Wharf, one hundred and sixty-eight feet in width, up and down the river; then comes a narrow alley, and then another wharf, called the City Wharf, one hundred and sixty-eight feet in width; so that the plaintiff's wharf is below the other two. There was evidence tending to show that, for years before the commencement of the suit, the defendants were in the habit of landing their steamboats frequently, and sometimes making several landings daily, at Roe's wharf, and sometimes lying there several hours; that when thus landed, the sterns of the boats thus landed would lap down below the upper portion of the plaintiff's wharf, and sometimes strike against the plaintiff's wharf-boat, doing it injury, and sometimes driving the wharf-boat and the float ashore, causing

expense in repairing and replacing the same; that when the defendants' boats were thus landed, with their sterns lapping down below the upper portions of the plaintiff's wharf, as above stated, other boats, in attempting to land at the plaintiff's wharf, by crowding between the steamboats and the plaintiff's wharf-boat, would sometimes push the latter ashore, causing damage and injury; that by reason of the landing of the defendants' boats at Roe's wharf, with their sterns extending down, as above stated, other boats navigating the river, which would otherwise have landed at the plaintiff's wharf, could not conveniently make that landing, and landed at the city wharf, whereby the value, business, and profits of the plaintiff's wharf were greatly diminished.

The above is not a full statement of the evidence, but it is a sufficient summary thereof to develop the questions on which the case must be decided, and to show the application of the charge of the court, which will now be noticed.

The court, of its own motion, charged, amongst other things, as follows:

"If you find from the evidence that the defendants, in landing their boats at another wharf-boat, lapped over and upon, to any extent, the plaintiff's wharf-boat, but doing no damage to the wharf-boat, stage planks, and other appendages, or float, to said wharf-boat, or that in landing at said other wharf lapped over to any extent the plaintiff's wharf-boat without touching it, these acts, if done without the plaintiff's consent, are trespasses; for the plaintiff has a right to have free access for steamboats to and from his wharf-boat that may wish to patronize it, and to the free use of all the adjacent waters near to, and in front of, his wharf-boat, irrespective of any skill with which the defendants' boats may be managed; and these acts, if done within six years immediately before the commencement of this suit, you should find for the plaintiff; but you can only assess nominal damages for these acts, unless they prevented other steamboats in getting to and from plaintiff's wharf-boat to take on and discharge freight or passengers, or that other.

boats have, by reason of these acts, landed to take on or discharge freight or passengers at some other wharf-boat instead of the plaintiff's; and if such is the case, then you should find for the plaintiff for such amount of damages as he has actually sustained by such acts, unless the evidence shows that the defendants' acts in lapping over without touching plaintiff's wharf-boat were done with malice, insult, or deliberate oppression, and if you find that is the case, you may, in addition to the actual damages sustained, give such exemplary damages as shall tend to prevent a repetition of the injury."

The charge was excepted to by the defendants below, and was made the foundation, in part, of the motion for a new trial. Error is assigned upon the ruling below in overruling the motion for a new trial.

The appellee claims that the appellants cannot be heard to say that the charge was erroneous, because it was embodied in charges asked by them to be given. We have examined the charges asked by the appellants, and find that none of them embodies such statement of the law as is contained in the charge above set out.

The questions arising in the case have been elaborately and very ably discussed by the respective counsel in the cause, both orally and in printed briefs, by which our labors have been materially lightened, and much time saved.

It is contended by counsel for the appellants, that the title of the owner of land bordering upon our navigable rivers extends only to high-water mark, while it is claimed, on the other side, that such title extends to low-water mark. This question, we think, does not arise in the case, and need not be decided, inasmuch as it was admitted on the trial that the plaintiff was the owner of the land, as stated in his complaint, and inasmuch as the result must be the same, whether the title of the appellee be deemed to extend only to high-water mark or beyond it. The question, however, is an important and interesting one, and as counsel on both sides have cited many authorities upon the point, we here refer

to some of the more important ones. *The People* v. *The Canal Appraisers,* 33 N. Y. 461; *McManus* v. *Carmichael,* 3 Iowa, 1; *The Steamboat Magnolia* v. *Marshall,* 39 Miss. 109; *Stevens* v. *The Patterson and Newark Railroad Co.,* 34 N. J. 532; *Railroad Company* v. *Schurmeir,* 7 Wal. 272; *Lessee of Blanchard* v. *Porter,* 11 Ohio, 138; *Booth* v. *Shepherd,* 8 Ohio St. 243; *Ensminger* v. *The People, etc.,* 47 Ill. 384.

The following cases in Indiana support the doctrine that the title of the riparian proprietor upon the Ohio river extends to low-water mark. *Stinson* v. *Butler,* 4 Blackf. 285; *Cowden* v. *Kerr,* 6 Blackf. 280; *Doe* v. *Hildreth,* 2 Ind. 274; *Gentile* v. *The State,* 29 Ind. 409; *Bainbridge* v. *Sherlock,* 29 Ind. 364, which was this case when before in this court; and *Martin* v. *The City of Evansville,* 32 Ind. 85.

This seems also to be the doctrine maintained in Ohio and Illinois, and also in Mississippi, as to the Mississippi river.

We may remark, in conclusion upon this point, that whatever might be our views upon this question, were it an original and open one, we think it should perhaps be regarded as settled by the decisions in this State, extending as far back as 1837, and continuing in an unbroken series down to the present time. These decisions have become a rule of property. Purchases have been from time to time made with a view to them; and were the question necessarily involved in the case, we should hesitate long before overturning them and establishing a new rule. But, as before stated, the question is not involved in the case. We proceed to the questions in the case.

It is hardly necessary to say that the Ohio is a navigable river. It was provided in the 4th article of the ordinance of 1787, for the government of the territory of the United States northwest of the river Ohio, that "the navigable waters leading into the Mississippi and St. Lawrence, and the carrying places between the same, shall be common highways, and forever free, as well to the inhabitants of the said territory, as to the citizens of the United States, and those

of any other states that may be admitted into the confederacy, without any tax, impost, or duty therefor."

The river being thus made a "common highway," it follows that if the appellee's title does technically extend to low-water mark, or even to the thread of the stream, he cannot so construct his wharf as to materially interfere with the navigation of the river. His title to the soil of the shore, or under the water, does not authorize him to obstruct in any way the free use of the river by the public as a common highway. He may build a wharf for the accommodation of the public navigating the river, and for his own private profit, not interfering with the navigation. But all this he may do, though his title extend only to the stream, or to high-water mark. Wharves are necessary for the convenience of transportation and commerce upon navigable rivers, and, if constructed so as not to interfere with navigation, aid and facilitate it. It is very well settled by authority that the owner of land bordering on a navigable stream, though his title extend no further than to the stream, not embracing the shore or land between high and low-water mark, may build such wharf.

Thus, in the case of *Bowman's Devisees* v. *Wathen*, 2 McLean, 376, the court say: "We apprehend that the common law doctrine, as to the navigableness of streams, can have no application in this country; and that the fact of navigableness does, in no respect, depend upon the ebb and flow of the tide. Where a stream, which is clearly not navigable, forms the boundaries of proprietors on each side of it, under the common law, each may claim to the middle of the stream. But this right cannot be exercised to the injury of other rights of the same nature. On navigable streams the riparian right, we suppose, cannot extend, generally, beyond high-water mark. For certain purposes, such as the erection of wharves, and other structures, for the convenience of commerce, and which do not obstruct the navigation of the river, it may be exercised beyond this limit."

In the case of *Yates* v. *Milwaukee*, 10 Wal. 497, the court

use the following language: "But whether the title of the owner of such a lot extends beyond the dry land or not, he is certainly entitled to the rights of a riparian proprietor whose land is bounded by a navigable stream; and among those rights are access to the navigable part of the river from the front of his lot, the right to make a landing, wharf or pier for his own use or for the use of the public, subject to such general rules and regulations as the legislature may see proper to impose for the protection of the rights of the public, whatever those may be. This proposition has been decided by this court in the cases of *Dutton* v. *Strong*, 1 Black, 23, and *The Railroad Co.* v. *Schurmeir*, 7 Wal. 272."

See, also, to the same effect, the case of *Grant* v. *The City of Davenport*, 18 Iowa, 179; also the case of *East Haven* v. *Hemingway*, 7 Conn. 186.

These cases (and there are, doubtless, others to the same effect) establish the proposition that the appellee has a legal right to his wharf, and is entitled to be protected in the enjoyment thereof, whether he be deemed to have a title to the soil of the shore or otherwise.

But the right thus to construct and use a wharf is subject to the paramount right of the public to navigate and use the river as a common highway, and can in no way interfere with such use of the river by the public. This principle runs through all the cases involving the question. *Dutton* v. *Strong*, 1 Black, 23; *Yates* v. *Milwaukee, supra; Grant* v. *The City of Davenport, supra; Rice* v. *Ruddiman*, 10 Mich. 125.

The river being thus a common highway, free to all citizens, it follows that every citizen has the right to use it as such, in all of its parts not occupied, for the time being, by others in its navigation. The right to use the stream as a highway is not confined to any particular part or portion thereof, but extends to the entire stream, just as the right to use a common highway extends to all parts thereof. *Williams* v. *Wilcox*, 8 A. & E. 314; *Morrison* v. *Thurman*, 17 B. Mon. 249; Angell Highways, sec. 226.

The right to navigate the river as a public highway includes, necessarily, the right to stop where the purposes of such navigation require it, for a reasonable length of time, to ship and discharge freight and passengers; just as a coach or cart or wagon may stop on the highway for like purposes. The navigation of public rivers is governed by the same principle that is applied to other common highways. Angell Highways, sec. 229. A craft navigating the river, perhaps, has a right to land upon the shore or bank of the riparian proprietor in case of necessity. Angell Highways, sec. 74. So, travellers on ordinary highways, in case of necessity, may go *extra viam*. Thompson Highways, 2. Wharves, though usually constructed for the benefit and profit of the owners in the charges received for their use, promote and facilitate the business of navigation; and boats may touch at any of them they may choose in the due prosecution of their business.

With these preliminary observations we are prepared to consider the charge given as above set out. The charge given embodies two propositions in substance.

First. That if the appellants' boats, in landing at another wharf, lapped over the appellee's wharf-boat, though without touching it, such acts were trespasses, if done without the consent of the appellee, and this irrespective of any question of skill with which the appellants' boats were navigated.

Second. That the appellee had the right to have free access to his wharf-boat for steamboats that wished to patronize it, and to the free use of all the adjacent waters near to and in front of his wharf-boat; and if the acts of the appellants, in landing their steamboats at another wharf, thus lapping over and upon the appellee's wharf-boat, as above stated, prevented other steamboats getting to and from the appellee's wharf-boat to take on or discharge freight or passengers, or if other boats, by reason of such acts, landed, to take on or discharge freight or passengers, at some other wharf-boat, instead of the appellee's, the appellants were liable for the damages which the appellee sustained thereby.

The charge thus given was, in our opinion, radically wrong in both particulars.

It would seem, on principle, that even if the appellants' boats had run against the appellee's wharf-boat and damaged it, the appellants would not be liable unless there was some want of skill or care in navigating the appellants' boats. The appellants, as we have seen, had a right to run their boats in all parts of the river, not for the time being occupied by other boats or craft navigating the river, and to stop at any wharf which their business might require. The appellee's wharf or wharf-boat is clearly entitled to no greater immunity, as against a person navigating the river, than if it had been a floating craft navigating the river, in which event, in case of collision, wilfulness, negligence, or want of skill would be necessary in order to hold a party responsible. Angell Highways, sec. 447. See, as having some bearing upon this question, the cases of *Morrison* v. *Thurman, supra*; *Taylor* v. *The Atlantic Mutual Ins. Co.*, 37 N. Y. 275; *Dalton* v. *Denton*, 1 C. B. N. S. 672.

But, however this may be, the charge is radically wrong in holding that the acts of the appellants, as set out, without touching the appellee's wharf-boat, would be trespasses, and in holding that the appellants would be liable to the appellee for damages occasioned by their boats' preventing other boats, by the means stated, from landing at the appellee's wharf.

We have already seen that the appellee, whatever may have been the extent of his title to the soil, had no right to so construct or use his wharf as to interfere with the paramount right of the public to the free use of the river as a common highway. The appellants had the legal right to navigate the river, and every part thereof, and to stop at such wharves as their business might require. And if in doing so, they, by a portion of the length of their boats, occupied the water in front of the appellee's wharf, they were but exercising a legal right, and could not, in so doing, be trespassing. The appellee was not, in our opinion, entitled "to the free use of all the adjacent waters near to and in

front of his wharf-boat," as against parties temporarily occupying the same in due course of the navigation of the river. Such a right in the appellee would be utterly inconsistent with the right of the public to the use of the river as a common highway.

The appellants had the right to land at such wharf or wharves as suited their convenience; and if in doing so the current of the river or other circumstance carried the stern of their boat down stream so that a portion of the boat's length lay in front of the appellee's wharf, but still in the navigable waters of the river, they were but in the exercise of a legal right, and cannot be responsible to the appellee for any consequential damages which he may have sustained by other boats' being thereby prevented from landing at his wharf, provided that the appellants, in thus exercising their right, exercised due care, skill, and dispatch, and subjected the appellee to as little inconvenience as was possible, consistently with the exercise of their own rights. Doubtless unreasonable and vexatious delays, thus wrongfully preventing ingress to and egress from the appellee's wharf, would subject the appellants to liability for the damages consequent thereon, but this was not the theory at all on which the case was put to the jury.

We have arrived at conclusions somewhat variant from those reached by the court when the case was here before (29 Ind. 364), but we are satisfied they are in accordance with the weight of the authorities, and in harmony with the general principles of the law as applicable to such cases. The case of *Ball* v. *Herbert*, 3 T. R. 253, cited in the former opinion, involved a question as to the right to use the banks of a river for towing boats, and has but little, if any, analogy to the case here. The same may be said with reference to the case of *Blundell* v. *Catterall*, 5 B. & Ald. 268, which involved the question whether or not the public had a common law right of bathing in the sea, and as incident thereto, of crossing the shore for that purpose. The case of *Dutton* v. *Strong*, 1 Black, 23, recognized the right of a riparian

Sherlock *et al. v.* Bainbridge.

owner to erect, for private use, a pier extending into the
lake, which served the purpose both of a landing place for
freight and for its storage.    So do we recognize the right of
a riparian proprietor to erect wharves for the landing of ves-
sels navigating the river, but it does not follow that the
owner of the pier in the one case, or of the wharf in the
other, acquires any rights thereby that can interfere in the
use of the lake or river as a common highway by the public.
In the former opinion, the following passage is quoted from
the opinion of MARTIN, C. J., in the case of *Rice v. Ruddi-
man*, 10 Mich. 125 : "They" (riparian owners) "have the right
to construct wharves, buildings, and other improvements in
front of their lands, so long as the public servitude is not
thereby impaired.    They are a part of the realty to which
they are attached, and pass with it.    Certainly no one can
occupy, for his individual purposes, the water in front of such
riparian proprietor, and the attempt of any person to do so
would be a trespass."    It is quite evident, from an exam-
ination of that case, that the language above quoted was not
intended to convey the idea that no one could temporarily
occupy the water in front of such riparian proprietor for the
purposes of ordinary navigation, without being a trespasser.
The whole statement is made with the qualification that the
public servitude was not to be impaired.    We quote another
passage from the same case, found in the opinion of CHRIS-
TIANCY, J., in which all the judges seem to have concurred.

He says:    "But this riparian ownership does not carry
with it the right to the exclusive and unrestricted use of the
lands ordinarily covered by the water; as in the case of rivers,
that use must in all cases be subordinate to the paramount
public right of navigation, and such other public rights as
may be incident thereto.    In other words, all the private or
individual use and enjoyment of which the land is suscepti-
ble, subordinate to, and consistent with, the public right, be-
long to the riparian owner as against any other person seek-
ing to appropriate it to his individual use."

From the evidence introduced, and the amount of the ver-

dict, it is apparent that the jury must, under the charge of the court, have allowed the appellee damages for the supposed invasion of his rights, in other boats' being prevented by the boats of the appellants from landing at his wharf.

The entire charge as given being wrong, the judgment will have to be reversed.

There are some questions made as to the pleadings, which, owing to the length of this opinion, we have concluded not to pass upon, inasmuch as when the cause goes back for another trial, the parties can amend their pleadings if they desire to.

The judgment below is reversed, with costs, and the cause remanded for a new trial.

DOWNEY, J.—For the reason that the decision in this case, as stated in the foregoing opinion, unnecessarily and improperly subordinates the rights of the riparian proprietor to the mere convenience of the navigator, I cannot assent to it.

*C. E. Walker, McDonald, Butler, & McDonald, J. Sullivan, Hendricks, Hord, & Hendricks, Walker & Roberts,* and *Lincoln, Smith, Warnock, & Stephens,* for appellants.

*H. W. Harrington* and *C. A. Korbly,* for appellee.

