Ross *et al. v.* Faust *et al.*

ROSS ET AL. *v.* FAUST ET AL.

| 54 | 471 |
|126|403|
| 54 | 471 |
|137|120|
|139|301|
| 54 | 471 |
|141|207|
| 54 | 471 |
|155|476|
| 54 | 471 |
|190 US 465|

NAVIGABLE RIVERS.—*White River.—Riparian Proprietors.*—The title of riparian proprietors on White river, in Marion county, in this State, extends to the thread of the stream, regardless of the facts that the survey lines of the United States surveyors meandered the banks and did not include the bed thereof, and that such bed was not, in terms, sold to, nor paid for by, purchasers of the lands bordering on such river.

SAME.—*Judicial Knowledge.*—The supreme court has judicial knowledge, as matter of fact, that White river, in Marion county, in this State, is not navigable.

SAME.—*Laws of the United States.—Act of* 1796.—The beds of fresh-water rivers, not navigable for vessels used in interstate commerce, by the act of Congress of 1796 in relation to the survey and sale of lands north-west of the Ohio river, are made the property of the persons owning the banks thereof; the ownership, on each side, extending to the thread of such streams.

SAME.—*United States Surveyors.—Power of.—Meandering Lines.*—A surveyor of the public lands of the United States can not determine the navigability or non-navigability of streams of water on such lands, and, by meandering the banks thereof in running his survey lines, exclude the ownership of the beds thereof by riparian proprietors.

SAME.—*Public Policy.*—Public policy dictates the ownership of the beds of non-navigable, fresh-water streams by riparian proprietors.

SAME.—*Salt-Water Streams.*—The title to the beds of streams of water in which the tide ebbs and flows is in the public.

SAME.—*Trespass.*—The riparian proprietors on White river, in Marion county, in this State, may maintain trespass against persons entering upon and carrying away gravel from the bed thereof.

PLEADING.—*Complaint.—Joinder of Trespass and Contract.—Answer.—Set-off. —Evidence.*—Where a paragraph for trespass is joined with one on contract in a complaint, an answer of set-off may be pleaded thereto, and on the trial thereof evidence may be given in support of each paragraph of such complaint.

QUERY.—In whom is the title to the beds of navigable, fresh-water rivers, in the territory north-west of the Ohio river?

From the Marion Circuit Court.

*D. V. Burn,* for appellants.

PERKINS, J.—Complaint by appellants, against appellees, in three paragraphs; two for trespass, in unlawfully taking and hauling away gravel from plaintiff's premises, and the third in assumpsit, for the price and value of

gravel used by defendants which belonged to the plaintiffs.

The defendants answered the entire complaint by the general denial, and by a second paragraph alleging an indebtedness by the plaintiffs to the defendants for the value of ground belonging to the latter and used by the former, and offering to set off the amount of its value against the demands of the plaintiffs, etc. The plaintiffs moved to strike out the second paragraph of answer. The motion was overruled.

They then demurred to it for the alleged reason that it did not contain facts sufficient, etc. The demurrer was overruled, and exception taken. Reply in denial and payment of defendants' set-off. Trial by the court. Finding for the defendants. A motion for a new trial was denied, and judgment rendered on the finding.

The ground assigned in the motion for a new trial was that the finding of the court was contrary to law and the evidence.

The assignment of errors, here, is,—

The court erred in overruling the motion to strike out the second paragraph of answer;

Erred in overruling the demurrer to the second paragraph of answer;

Erred in overruling the motion for a new trial.

The second paragraph of answer, it will be observed, does not allege a tortious taking of the gravel, the value of which is answered as a set-off. It avers that the plaintiffs are indebted to the defendants for gravel hauled away, perhaps by permission, perhaps by mistake.

The court did not err in overruling the motion to strike out the second paragraph of answer, nor in overruling the demurrer to it.

The plaintiff had joined a paragraph in contract with paragraphs for trespass, in his complaint, and an answer of set-off was well pleaded to the paragraph on contract. It was a good answer to that, and if it was not an answer

to the whole complaint, this fact did not render it demurrable. *Myers* v. *The State, ex rel.,* etc., 45 Ind. 160.

We do not decide whether, in a case where the plaintiff has been guilty of the first fault in misjoining causes of action in tort and on contract, an answer by way of set-off may not be good to the whole complaint. See *Morse* v. *Hutchins,* 102 Mass. 439.

On the trial, the plaintiff might be allowed to give evidence in support of each and all the paragraphs of his complaint, *Paris* v. *Strong,* 51 Ind. 339; and a general verdict for the aggregate damages on all the paragraphs might be rendered. As to the ruling on the motion to strike out, the paragraph, as we have seen, was good, even on demurrer.

The remaining error assigned is the overruling of the motion for a new trial.

In considering and deciding the question of error in this ruling, it becomes necessary that we should determine whether the title of the owners of land in Marion county, Indiana, bounded on one side by White river, extends to the edge of the stream, or to the thread of it. If only to the edge of the stream, there was no trespass in this case; if to the thread of it, there was. The trespass complained of was the taking gravel from the bed of White river.

We have in the United States three classes of rivers:

One, in which the tide ebbs and flows and may be called salt-water rivers;

One, of fresh-water rivers which are navigable for vessels used in interstate commerce;

One, of fresh-water rivers which are not navigable for vessels used in interstate commerce.

The ownership of the bed of the first class of rivers mentioned is in the public.

The ownership of the bed of such of the second class as are in what is known as the North West Territory is in doubt. There is no such concurrence of judicial opinion on the point as enables us to say, upon authority, who

owns the bed of these rivers, and it is not necessary that we should decide the point in this case.

The ownership of the bed of the third class is, prima facie, in the proprietors of the opposite banks, each owning to the thread of the stream. We say prima facie, because the conveyance to a riparian proprietor may be drawn in terms so restrictive as to limit his title to the bank as a boundary, when, but for such restrictions, it would extend to the thread of the stream.

But how is the court to be informed that a given fresh-water stream or a given part of it is or is not navigable? The tide, as a general rule, answers this question as to salt-water streams, but as to fresh-water there is no such natural criterion. The fact of the navigability of many streams and parts of streams is so generally known that the courts take judicial notice of it, and proof upon the trial is not required. *Neaderhouser* v. *The State*, 28 Ind. 257.

By the act of Congress of 1796, in respect to the survey and sale of the lands north-west of the Ohio river, the public lands were required to be divided so as to form townships six miles square, unless where, etc., or the course of navigable rivers might render it impracticable; and it was further provided by the act that all navigable rivers within the territory mentioned therein should remain public highways, " and that in all cases, where the opposite banks of any stream, not navigable, shall belong to different persons, the stream and the bed thereof shall become common to both." The language of this act creates a tenancy in common, but it is decided in *Railroad Company* v. *Schurmeir*, 7 Wal. 272, that by the above provision the Congress meant to enact that the common law rules of riparian ownership should apply in cases of owners of the opposite banks of non-navigable streams, giving each exclusive ownership to the thread of the stream, thus giving us another instance where a court has exercised its great but beneficent power of enforcing statutes according to

what the legislature meant or ought to have meant, rather than according to what it said. The same construction is given to this provision by the courts of Ohio. Walk. Am. Law, 6th ed., p. 300.

"The second section of the act of Congress of 1796 provides that navigable rivers shall not be included in public surveys; but does not indicate what shall be considered such; and it is left to the discretion of the surveyor to include a given river or not. But of course his decision can not be conclusive." Walk. Am. Law, *supra*.

The idea that the power was given a surveyor or his deputy, upon casual observation, to determine the question of the navigability of rivers, and thereby conclude vast public and private rights, is an absurdity. Moreover, the act of Congress does not determine the effect the conclusion of the surveyor upon the navigability of a stream and the fact of his meandering its banks shall have upon the title of riparian owners to the bed of the stream. His meander lines are not boundary lines, and the question still remains, how far beyond these meander lines does the title of the riparian proprietor extend? Does it go to high water-mark, to low water-mark, or to the thread of the stream? Judicial opinions are about equally divided on this question. *Doe* v. *Hildreth*, 2 Ind. 274; *Railroad Company* v. *Schurmeir*, 7 Wal. 272; *Sherlock* v. *Bainbridge*, 41 Ind. 35; *Adm'rs of Gavit* v. *Chambers*, 3 Ohio, 495; *Middleton* v. *Pritchard*, 3 Scam. 510; *Braxon* v. *Bressler*, 64 Ill. 488; *Musser* v. *Hershey*, 42 Iowa, 356; *Granger* v. *Avery*, 64 Me. 292; *Benson* v. *Morrow*, 61 Mo. 345; *County of St. Clair* v. *Lovingston*, 23 Wal. 46.

But while the act of Congress does not declare the extent of title of a riparian proprietor upon a navigable stream, it does emphatically declare the title of a proprietor upon a non-navigable stream shall go to the thread of the stream. *Railroad Company* v. *Schurmeir*, *supra*.

And from what has been said it will appear that, in our opinion, in the language of DEWEY, J., in *Martin* v. *Bliss*,

5 Blackf. 35, "Nature is competent, we should imagine, to make a navigable river without the help of the legislature;" and, we may add, can determine the fact whether she has succeeded or not, in a given case, with as much accuracy as a deputy surveyor. It is navigability in fact, which constitutes navigability in law. *McManus* v. *Carmichael*, 3 Iowa, 1.

The court knows, judicially, as matter of fact, that White river, in Marion county, Indiana, is neither a navigated nor a navigable river. It follows, of course, that by the express enactment of Congress, the title of its riparian proprietors extends to the thread of the stream. This would seem to make an end of controversy in this case.

But it is claimed that the surveyor made a mistake, and meandered the banks, and failed to survey the bed of a non-navigable stream, and that, hence, its bed was not bought and paid for and did not pass to the purchasers of the bordering lands.

This proposition assumes, as a legal principle, that the bed of a stream can not pass to the purchaser of the adjoining land unless it is included in the survey and paid for. This is begging the question.

We have already seen, above, that, as to lands bordering on rivers actually navigable, the beds of which, by law, were not to be surveyed and paid for, it is not well settled that the common law does not apply and carry the title of the riparian purchaser to the thread of the stream.

On the other hand, it is well settled, that, in the analogous case of a purchaser of land bordering on a public highway on land, the title of the purchaser extends to the middle of the same. In a late case, *Pettibone* v. *Hamilton*, 40 Wis. 402, it is decided, that, in the absence of anything in his deed to show a contrary intention, the grantee of a lot in a recorded plat takes to the centre of adjoining public ways, subject to the public easement; and this result is not affected by the fact that the description in the deed, as well as the plat, gives the dimensions

of the lot as it is, exclusive of the highway, and, that this doctrine applies in favor of one who took a deed by metes and bounds, only, of land which afterwards constituted a distinct lot upon a plat subsequently made and recorded by his grantor.

*Woodman* v. *Spencer*, decided in 1875, by the supreme court of New Hampshire, 14 Am. Law Reg. 411, is an equally strong case. It is there decided, that, " Where a conveyance of land describes it as bounded by a stream not navigable, or by a highway, whatever terms may be used in describing such boundary, it must be construed as extending to the middle of the same, unless there is a clear expression of an intention to limit it to the margin of such stream or way." And the reason is given for this rule, both in the opinion in the case and by REDFIELD, J., in a note to it.

Substantially the same reasons are assigned for the rule in *Braxon* v. *Bressler*, 64 Ill. p. 492. The rule is founded in public policy. " The peace of society," (says MR. JUSTICE THORNTON,) " and the security of personal rights demand a legal recognition of ownership of the beds of the streams within the States, as well as the water. Wrongs and trespasses must often be committed. Contests and litigation as to the rock, as in this case, and frequently as to the gravel and soil, must arise. The riparian owner should have a remedy against the wrong-doer. He gains by alluvion and loses by avulsion, and, for his full security, should have the right to protect the bed of the stream from individual trespasses. The opposite view vests the fee in the United States, and makes them the proprietor of every navigable stream in the State. Their interposition in the prosecution of trespasses would be an intermeddling with the policy of the State, and would be perilous to its sovereignty. The common law rule would best subserve the public peace and protect from violence."

The above views of the supreme court of Illinois, are expressed touching the ownership of the bed of Rock

river, a larger stream than White river, and to some extent navigable. Their force is much greater when applied to a stream like White river.

JUDGE REDFIELD, in the note above referred to, speaking of the rule that extends the title of owners upon highways and streams to their centre, says, "its chief object is to prevent the existence of innumerable strips and gores of land along the margins of streams and highways, to which the title, for generations, shall remain in abeyance, and then, upon the happening of some unexpected event, and one, consequently, not in express terms provided for in the title-deeds, a bootless, almost objectless, litigation shall spring up, to vex and harass those who in good faith had supposed themselves secure from such embarrassment." *Woodman* v. *Spencer, supra.*

In *Grose* v. *West,* 7 Taunt. 39, GIBBS, C. J., says, "*Prima facie* the presumption is, that a strip of land lying between a highway and the adjoining close, belongs to the owner of the close; as the presumption also is, that the highway itself, *ad medium filum viæ,* does." Accord, *Cox* v. *The Louisville, etc., R. R. Co.,* 48 Ind. 178.

Public policy, as has been already said, dictates the private ownership of the bed of non-navigable rivers.

The facts, then, that the bed of the river was not surveyed nor paid for, do not, necessarily, exclude it from the ownership of the adjoining proprietors; and as to the fact, if it be so, that it was not paid for, we may observe that it is a circumstance of little importance. The Government was not selling her public lands for the purpose of making money. She did not sell them for their value. She was selling them for an almost nominal price, a dollar and a quarter an acre—enough to cover the cost of survey and sale, possibly a little more. Her object was to induce the settlement in the country of a hardy, land-owning people. Her surveys of the whole were more or less inaccurate. We know, as matter of general knowledge, that often sections exceed and often fall short of

the quantity paid for, to a greater extent than was pro-
duced by the mistake of the surveyor, in this case, touch-
ing the fact of the navigableness of the stream. It could
have produced a loss of but a very few dollars. On the
other hand, we have the clearly expressed intention of
the grantor, expressed by a solemn legislative enactment,
that the title should pass, to the thread of the stream.

And the mistake of the surveyor is not one occasioning
a loss of such pecuniary amount that it would be regarded
as sufficiently affecting the fairness of a private contract,
to violate it. We think the title of riparian proprietors
on White river, in Marion county, Indiana, extends to
the thread of the stream, notwithstanding the bed of the
stream was not surveyed by the United States surveyor,
nor, in terms, sold to purchasers of the bordering lands.

The judgment is reversed, with costs, cause remanded,
with instructions to proceed in accordance with this
opinion.