RIDGWAY ET AL. *v.* LUDLOW.

NON-NAVIGABLE LAKES.— *Riparian Proprietor.—Bed of Lake Within Congressional Survey.— Title to.*—The owner of land bordering on a non-navigable lake lying within the congressional survey is the owner of the bed of such lake to the thread thereof.

SAME.—*Adverse Possession.*—Where one acquires title by adverse possession, under claim of title, for twenty-five years, to land bordering on a non-navigable lake lying within the congressional survey, he also acquires title to the bed of such lake to the thread thereof.

SAME.—*Reentry by Owner.*—Where the owner of a tract of land, which adjoins a tract bordering on a non-navigable lake lying within the congressional survey, under a claim of title, though without a conveyance, enters upon the latter tract, encloses the same within fences extending to the margin of the lake, and uses the same continuously for a period of twenty-five years, his title to such tract, and to the bed of such lake to its thread, becomes perfect, notwithstanding the fact that after such enclosure the waters of the lake receded, and notwithstanding the fact that the original owner, without the knowledge or consent of the claimant, and without asserting any claim of ownership, had, within twenty years after such enclosure, entered upon such bed, and removed its natural products.

From the Laporte Circuit Court.

*A. L. Osborn* and *W. H. Calkins,* for appellants.

BIDDLE, C. J.—Complaint in two paragraphs, by the appellee against the appellants, to recover the possession of certain lands.

Denial; trial by the court; and, at the request of the parties, the court stated the facts in writing, and the conclusion of law upon them, as follows:

"1. That, in the year 1847, the plaintiff was the owner in fee, and in possession, of the fraction of land lying between the lake, in the south-west quarter of section 6, in township 36 north, of range 2 west, and the south line of said section.

"2. That, while so the owner of said land, in the year 1848, the plaintiff sold and conveyed in fee, to Jacob R. Hall, the following portion of said tract, to wit:

"Beginning at the south-west corner of said section, and running east thirty-two chains; thence north, three and a half degree east, nine chains and four links; thence north, forty-nine degrees west, two chains and seventy-five links; thence south, twenty-five and one-half degrees west, three chains and sixty links; thence south, forty-one and one-half degrees west, five chains and six links; thence south, sixty-nine and three-fourths degrees west, eight chains and twenty-five links; thence north, seventy-eight and one-fourth degrees west, seven chains and twenty links; thence north, eighty-three and one-half degrees west, five chains and thirty-three links; thence north, eighty-eight degrees west, five chains and fifty links; and thence south, three chains and seventeen links, to place of beginning."

"3. That shortly afterwards, in the year 1848 or 1849, the said Jacob R. Hall agreed to sell and convey to the defendant James Ridgway the following portion of the last mentioned tract, to wit:

"Beginning at the south-west corner of said section,

thence north, on the section line, three chains and seventeen links, thence south, eighty-eight degrees east, five chains and fifty links; thence south, eighty-three and one-half degrees east, five chains and thirty-three links; thence south, seventy-eight and one-fourth degrees east, seven chains and twenty links; thence north, sixty-nine and three-fourths degrees east, two chains and fifty links, to the east line of the west half of the said quarter section; thence south two chains and twenty links; and thence west to the place of beginning, containing five and one hundredth acres.

" 4.   That the plat hereto attached shows the survey of said section, as made by the Government of the United States.

" Town. 36 N., R. 2 W., 2d Mer.

" 5. · It is further found, that, during the year 1854, and prior thereto, the water in said lake stood at its ordinary level, but that year, or in the year after, a ditch was dug out from the lake, whereby the water therein was lowered so much, that it thereafter receded so far from its southern

margin, as to uncover eight or ten acres of land of the tract conveyed by Hall to Ridgway.

" 6.    That, just before the said conveyance by the plaintiff to Hall, the plaintiff and Hall went upon the land with a surveyor and had the land surveyed out by metes and bounds, as described in said conveyance, and that no part of said tract so surveyed at that time touched upon said lake.

" 7.    That, for twenty-five years last past, the said defendant James Ridgway has owned and occupied the eighty-acre tract of land adjoining on the south side of said tract conveyed to him by Hall, and during that period he has had said last named parcel enclosed, by running the fences on the east and west side of said eighty-acre tract, out to the water of said lake.    That during said period the defendant has had in cultivation so much of said parcel of land conveyed to him by Hall as lies upon the bank above the old margin of the lake; and that, since the water in the lake has receded by reason of cutting said ditch, the defendant has pastured upon the land so uncovered from water, and cut hay off of the same.

" 8.    That, in the years 1862, 1863 and 1865, the plaintiff openly, by his hired men and by his tenants, entered upon said reclaimed land, and cut hay on the same, and hauled it away; but such entry and such acts done were at the time unknown to the defendant.    And the court further finds, that, at the time of said entries, the plaintiff did not know that the defendant made any claim to said land.

" 9.    The court further finds the annual value of the rents for the six years next prior to the commencement of this suit at $30; making a total of $180 for said six years.

" 10.    The court further finds, as a conclusion of law from the foregoing facts, that the plaintiff is the owner in fee of the tract of land mentioned in said complaint, and

is entitled to the possesssion thereof, and entitled to recover the damages of $180."

The appellants excepted to the finding of the court and the conclusions of law thereon; and also moved for a new trial. The motion, over their objections and exceptions, was overruled.

The following questions of law are made in the case, and must be settled:

1. Is the owner of lands bordering on the margin of a non-navigable lake, by virtue of such ownership, also the owner of the land, extending under the water, to the thread, or a line along the middle, of the lake?

2. If such title to land, on the margin of such lake, is acquired by twenty-five years' adverse possession and use, under the statute of limitations, will such title affect the ownership of such land, under the water, to the thread or middle of the lake?

1. The first question, as to non-navigable rivers in the State of Indiana, is settled in the affirmative in the case of *Ross* v. *Faust*, 54 Ind. 471, and we can see no difference in principle in this rule, whether applied to non-navigable rivers or non-navigable lakes, when they are within the congressional surveys. In this view, we are directly supported by the case of *Rice* v. *Ruddiman*, 10 Mich. 125.

2. Why the character of the title to the land, if it is such as can be maintained legally, can affect the rule as settled under the first question, we do not perceive. Any title in the owner of the land, which can be maintained to the margin of the lake, will maintain itself to the thread or middle of the lake, within the congressional survey. A title to land acquired by twenty-five years' adverse possession, as against persons not under disability, is as effectual to maintain the possession of the land in the owner, as if it was derived by patent from the United States, deed from the owner, or by any other muniment of title.

It remains to apply these principles of law to the facts stated in the finding before us.

The third paragraph of the finding of the court shows by description what land was sold by Jacob R. Hall to James Ridgway, lying in the west half of the southwest quarter of section six, in township thirty-six north, range two west; and also shows, in the seventh paragraph, that Ridgway owned the eighty-acre tract of land adjoining, on the south, the piece he had bought from Hall, which eighty-acre tract, as we must know judicially—because the congressional surveys are part of the public law—is the west half of the north-west quarter of section seven, in township thirty-six north, range two west. The same paragraph of the finding also shows, that Ridgway enclosed the land he bought of Hall, by running fences on the east and west sides of the said eighty-acre tract of land, out to the water of said lake; and that he occupied and used the land to the margin of the lake, under a title adverse to the title by which the appellee now claims the land. In our opinion, this gives James Ridgway a title to that part of the land which lies south of the thread, or middle, of the lake, and within the congressional survey, in the west half of the southwest quarter of section six, in township thirty-six north, range two west, and the right to its possession, and this includes the land in controversy. We do not think that Ridgway need to claim title through Hall, or show that Hall's title from Ludlow includes the land he claims; he may rely at once upon his adverse possession, under color and claim of right, during twenty-five years. Nor do we think that the fact that the water in the lake receded, in consequence of being drained off by a ditch, or from natural causes, or whether it receded at all or not, has any consequence in the case. The title of Ridgway to the land under the water, south of the middle of the lake, and within the congressional survey, is the same, whether the water rose or fell. Nor can we perceive that the fact

that Ludlow, in the years 1862, 1863 and 1865, entered upon the land in dispute, cut and hauled away hay from it, without the knowledge of Ridgway, can have the least effect in the case. It does not appear that he entered under any claim or color of right, or that he was any thing but a trespasser. The statement of facts nowhere shows, that Ludlow, at any time after his conveyance to Hall, ever claimed any title to any part of the land in the south-west quarter of section six, lying south of the middle or margin of the lake, which includes the land in controversy.

We do not examine the question of the sufficiency of the evidence to sustain the finding, because we think the proper conclusion of law on the finding as made is in favor of the appellants.

The judgment is reversed, with costs, and the cause remanded, with instructions to render judgment in favor of appellant, as a conclusion of law upon the facts as stated in the finding.