Edwards *v.* Ogle *et al.*

No. 8021.

## EDWARDS *v.* OGLE ET AL.

RIPARIAN RIGHTS.—*United States Survey.—Conveyance by Metes and Bounds.*—In 1858 the United States issued to A. a patent for the west ½ of the southwest ¼ of section 6, township 6 north, range 6 west. In 1851 the United States granted to the State of Indiana as swamp lands, and January 4th, 1854, A. purchased from the State, the east ½ of the southwest ¼ of said section, and obtained a patent therefor. The subdivisions named above were as laid off and designated in the original survey, under the direction of the Surveyor General of the United States. In 1843 a re-survey of these lands was made by the direction of said officer, under the act of Congress of March 3d, 1837, including in said survey a pond covering a portion of said land, and the tract book returned with said survey designated a certain part of said land as the "southwest fraction of said section, town and range," etc., describing it by metes and bounds corresponding on the north and east to the meandering of the shore of said pond; and in 1845 the United States granted said southwest fraction to the State for the Wabash and Erie canal, which, on June 1st, 1869, sold the same to the remote grantor of B., who claims title, and is in possession under an unbroken chain of deeds, duly recorded, this fraction containing 39 acres, and being bounded on the north and east by a marshy pond, not navigable.

*Held*, that A. is the owner of all the land covered by the patents issued to him except the 39-acre fraction, and that B. is not the owner or entitled, by reason of any riparian rights, to the possession of anything more than is included in the boundaries of said fraction, and the fact that the land borders on said pond does not give him a right to possession to the center of said pond, the original survey of the pond and margins having been made as though the whole were dry land.

*Held*, also, that, where one purchases land bordering on non-navigable water, he can not maintain a claim of title to the center of the water, where such a claim would overlap the section lines as surveyed.

PRESUMPTION.—*Act of Congress of March 3d, 1845.*—The act of Congress of March 3d, 1845, gave to the State one moiety of all unsold and otherwise unencumbered lands in the Vincennes district, to aid the State in its internal improvement work, the moiety to be selected by commissioners as therein provided; and the presumption is, that, where the commissioners selected fractional sections, such selection was necessary to carry out the provisions of the act requiring an equal division.

From the Greene Circuit Court.

*W. I. Baker* and *L. Shaw*, for appellant.
*A. G. Cavins* and *E. H. C. Cavins*, for appellees.

NEWCOMB, C.—This was an action for the recovery of real estate, brought by Marshal N. Ogle and the appellees other than Bethia L. Ogle, against the appellant. Since the judgment Marshal N. Ogle has died, and the name of Bethia L. has been added to the record as one of his heirs.

The facts in the case, and the legal questions involved, sufficiently appear in the special finding of facts and conclusions of law, of which we copy all that bears on the questions either of law or fact, as follows:

"That, on ——— 1858, the United States issued to Alfred M. Ogle a patent for the land described as the west half of the south-west quarter of section six, in township six north, in range six west, in Greene county, Indiana; that, in 1851, the United States granted to the State of Indiana, as swamp lands, under the laws relating to swamp land, and that afterward, on January 4th, 1854, Alfred M. Ogle purchased of the State of Indiana, the land described as the east half of the south-west quarter of said section, in Greene county, Indiana, and obtained from the State a patent therefor; and that the plaintiffs are the owners, by descent from said Alfred M. Ogle, as his heirs, of the interest in said lands that was vested in said Alfred M. Ogle, by virtue of said patents.

"That the subdivisions of said land, described in said grant and patents, are the subdivisions as laid off and designated in the original survey of lands in said county, under the directions of the Surveyor General of the United States; that, in the year 1843, a re-survey of said lands was made by Nathaniel L. Squibbs, under the direction of the Surveyor General of the United States, under the act of Congress of March 3d, 1837, 5 U. S. Stat. at Large, p. 170, including in said survey the boundaries of a pond covering a part of said land; that the tract book returned with said survey designated a certain part of said land as the 'south-west fraction of said section, town and range, containing thirty-

Edwards *v.* Ogle *et al.*

nine acres, including that part of said quarter section lying
south-west of said pond, the boundary and meander lines of
which are as follows, to wit:    Beginning at the south-west
corner of said section six, and running thence, for the west
side of said tract, north on the west line of said section
thirty-nine chains to said marshy pond, and for the south
side, running east from said corner, on the south side of
said section, twenty-two chains to said pond, and for the
meander line of said pond, running as follows, to wit:    Be-
ginning at a point on the west line of said section at a point
thirty-nine chains north of the south-west corner of said
section six; thence south thirty-five degrees east, eleven
chains; thence south twenty-five degrees east, ten chains;
thence south forty degrees east, five chains; thence south
thirty-one degrees east, six and one-half chains; thence south
twenty-four degrees east, seven chains; thence south forty-
seven degrees east, six and ninety hundredths chains, to
the south line of said section.'

"That, in the year 1845, the United States granted said
land to the Wabash and Erie Canal, by the description of
the 'south-west fraction' of section 6, town and range aforesaid,
and that on June 1st, 1869, the Wabash and Erie Canal, by
the trustees, sold and conveyed said land, so granted to it,
to one Tobias Pope, under whom the defendant claims title
by an unbroken chain of deeds, all duly recorded; and by
said deeds the defendant is the owner of the interest granted
by the United States to the Wabash and Erie Canal; that
the defendant is now in possession of said tract of 39 acres,
and he and those under whom he claims have been in pos-
session thereof for eight years last past, and the remaining
portion of said land is now and has always been wild, uncul-
tivated and unoccupied, and not in the actual possession of
any one. * * That said land is situated, with reference to
a pond, as shown in the following plat, to wit:

Edwards *v.* Ogle *et al.*

A—*N. W. cor. Section 6.*          [SCALE—40 Ch's to an inch.]
B—*N. E. cor. Section 6.*
Y—*S. W. cor. Section 6.*

"That said pond is from a mile to a mile and a half in width from east to west, and extends from town 7, range 6, on the north, to and including the northern part of section 7 in town 6, range 6 ; that the water from Buck Creek flows in on the north and down the east part of said land, and Bee Hunter Creek flows in on the north and down the west side of said pond toward the outlet to the south, the current being very slight and gentle ; that in high water the said pond is covered with water to the depth ranging from one to five or six feet ; that, in ordinary seasons, the water covers parts of said pond during the whole year ; that, in exceedingly dry seasons, the water disappears below the surface, leaving the wet marshy ground visible, and at one time parts of it became so dry that portions of the vegetation in the pond ignited and burned, so that holes were left in the surface of the bottom of the pond ; that, in ordinary seasons, the water extends over all the pond, except during the months of August, September and October, when it usually recedes from all except the low parts of it.   *   *

VOL. 76.—20

·"That plaintiffs never acquired title to said land in any other manner than by virtue of their aforesaid patents, and neither of the parties have been in possession of any part of said land for twenty years in succession.

"J. C. ROBINSON, J. C. C."

The conclusions of law on the foregoing facts, were:

"*First.* That plaintiffs are the owners and entitled to the possession of all the land described in their complaint, except the 39 acres described by metes and bounds and designated in the survey of N. L. Squibbs, above referred to, as the south-west fraction of section 6.

"*Second.* That said defendant is the owner and entitled to the possession of the 39 acres included in the metes and bounds of the said survey of said Squibbs, and therein designated as the south-west fraction of section 6.

"*Third.* That said defendant is not entitled to the ownership or possession of any of the lands described in the complaint herein, lying outside of the boundaries defined in said survey of said Squibbs and designated as said 'S. W. frac. sec. 6,' by reason of any riparian right.

"JOHN C. ROBINSON, J. C. C."

The defendant excepted to the first and third of said conclusions of law, and the plaintiffs excepted to the second of said conclusions.

The appellant has assigned for error the conclusions of law to which he excepted, and the appellees have assigned a cross error on the second conclusion of law.

The appellant claims that, inasmuch as his tract of thirty-nine acres borders on the marshy pond, his title extends to the center of the pond, and is not confined to the boundary defined by the Squibbs survey. Under the facts found we deem this claim inadmissible. By the original survey, the pond, as well as its margins, had been surveyed as public land. The section, half-section and quarter-section lines were run and defined as though the whole had been dry

land.   Suppose, then, that Pope, through whom the appellant claims, had purchased the whole of the southwest quarter, instead of a portion of it, his right must have terminated at the boundary of the quarter-section.   No claim could have been made to the center of the pond by reason that the eastern boundary of his purchase bordered on its margin ; for, in the case supposed, the eastern boundary would have been in the body of the pond, over one-fourth of a mile from the western shore line.   Certainly the purchase of a fraction of the quarter-section could not give to the purchaser a larger body of land than a grant of the whole would have done.   To give effect to the claim of the appellant, his thirty-nine-acre purchase in the southwest corner of the section must be held to invest him with a title to all of the southwest and a half or more of the southeast quarter, south of a line thirty-nine chains north of the southern boundary of the section.   Such a result would unduly magnify the importance of the Squibbs survey.

Counsel for the appellant refer us, in support of their position, to *Ross* v. *Faust*, 54 Ind. 471, and *Ridgway* v. *Ludlow*, 58 Ind. 248 ; but the facts in those cases differed essentially from those in this case.   *Ross* v. *Faust, supra,* involved the question of riparian rights of the owners of land bordering on White river, in Marion county.   The bed of the river had not been surveyed as a part of the public domain, but, on the theory that White river was a navigable stream, the government surveys had been terminated at the margin thereof.   It was held that the watercourse in question was not a navigable river, and that the owners of land on its banks took to the thread of the stream.

*Ridgway* v. *Ludlow, supra,* presents this state of facts, as we understand them.   A lake covered a portion of the southeast quarter of a certain section of land, and the larger portion of the southwest quarter, and extended over into the section adjoining on the west.   The survey showed no

subdivisions of less than a quarter section. A narrow strip of land extended from east to west between the lake and the south line of the southwest quarter of the section. The west half of this strip had been conveyed by metes and bounds, which carried the northern boundary to the south shore of the lake, but did not mention that as the boundary, and it was held that the deed gave the grantee title to the center of the lake. The case does not state the phraseology of the patent from the United States to the party through whom the claimant derived his title; but there is nothing to indicate that the dry land had been separately surveyed and patented by the government, nor that, by extending the boundary of the grant to the center of the lake, it would absorb and override the lien of any legal subdivision of the quarter section.

We do not think that either of the cases cited sustains the claim of the appellant, nor do we know of any case that goes to the extent of deciding that a purchase of a given subdivision of public lands which happens to have for one of its boundaries a marsh or pond, will give the purchaser a part or all of another defined subdivision, in order to reach the center of such pond. On the contrary, in the case of *Yates* v. *Milwaukee*, 10 Wal. 497, the rule is laid down, that if the bed of a stream was originally a part of the public lands of the United States, a grant of land bordering thereon, and defined by metes and bounds corresponding to the meandering of the shore line, would limit the title to the margin of the stream.

The appellees claim that the Squibbs survey was not authorized by any law, and was therefore void; that the subsequent purchase by, and the grant to, Alfred M. Ogle, vested in him the title to the entire west half of the southwest quarter, notwithstanding the prior grant of the 39 acres to the State of Indiana for the purposes of the Wabash and Erie Canal.

The act of March 3d, 1837, referred to in the finding as authority for the Squibbs survey, was an act making appropriations for various purposes, and, among others, for completing the surveys of unfinished portions of townships, islands, lakes, etc., in Ohio, Indiana, Michigan and Wisconsin. We do not deem it necessary to enter into a discussion of the powers, under said statute, of the officers having charge of the public lands, or to determine whether the land in controversy was embraced within the act, as we think the State acquired a good title to the thirty-nine-acre tract by virtue of the act of Congress of March 3d, 1845, granting certain lands to the State of Indiana to enable the State to extend and complete the Wabash and Erie Canal from Terre Haute to the Ohio river. 5 U. S. Stat. at Large, p. 731.

The first section of this act gave to the State one moiety of the unsold public lands in a strip five miles wide on each side of said canal, to be selected by an agent or agents, to be appointed by the Governor, subject to the approval of the Secretary of the Treasury of the United States, reserving to the United States each alternate section, or other proper subdivision of said land.

The second section granted to the State one moiety of all the other lands in the Vincennes land district, remaining unsold and not otherwise encumbered, to be selected under the authority and by the direction of the Governor. The lands so selected were required to be reported by the Governor to the land-office at Vincennes.

As the court found that this particular tract of land was granted by the United States to the State for canal purposes, by the act of 1845, such finding includes the finding of the fact that it was selected in the manner provided for in said act, as the grant could not take effect until such selection was made and notice thereof given to the proper land-office. The act did not limit the selection to the original subdivisions of the public lands, and it may be that, to

give the State an even moiety, it became necessary, in some cases, to select a less quantity than such a subdivision. We can not presume that such was not the case; on the contrary, the legal presumption is, in the absence of countervailing proof, that public officers have properly performed their public duties. We are of opinion that the circuit court did not err in its conclusions of law, and that its judgment should be affirmed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion that the judgment below be and it is in all things affirmed, at the costs of the appellant.