OREGON SHORT LINE & U. N. RY. CO. v. ILWACO RAILWAY & NAVI-
GATION CO.

(*Circuit Court, D. Washington, W. D.*  August 27, 1892.)

1. CARRIERS—USE OF WHARF OF RAILROAD COMPANY BY STEAMBOATS.
   A railroad company, owning a wharf extending into public navigable waters, maintained thereon a station and passenger depot, and used the wharf for its own line of steamers, in connection with its railroad traffic. *Held,* that a steamboat company, not a rival of the railroad company in its railroad business, was entitled to the use of the wharf, for a reasonable compensation, to the extent of receiving and discharging passengers and freight.

2. SAME—FACILITIES AT RAILROAD WHARF.
   That such wharf is too small to accommodate steamers, other than those of the railroad company, is not a ground for denying to a steamboat company, not a competitor except in its steamboat business, the right to use the wharf, for a reasonable wharfage, for the purpose of receiving and discharging freight and passengers, since a railroad, as a public carrier, must provide necessary facilities for the transaction of its business with safety and reasonable convenience to its passengers.

In Equity.  Suit for an injunction to compel the defendant, a railway corporation and owner of a wharf, to allow steamboats operated by the complainant to receive and discharge passengers and freight upon said wharf.  Injunction granted.

*W. W. Cotton,* for complainant.

*C. W. Fulton,* for defendant.

HANFORD, District Judge.  The complainant's grievance is that the defendant by its ownership of a wharf at the town of Ilwaco, extending into the navigable waters of Baker's bay, and by maintaining thereon a railroad station and passenger depot, appurtenant to its line of railway, and by making said wharf a landing place for steamboats owned and operated by it, and refusing to permit steamboats owned and operated by the complainant to land at said wharf, imposes upon all passengers and freight received by or discharged from its railroad, at said station, the necessity of being carried to and from other places by its steamboats, or suffer inconvenience in being carried to the next station on the line of said road, and has thereby contrived to secure a monopoly in the transportation of freight and passengers to and from the station upon said wharf.  To prevent the defendant from giving such undue preference to its own steamboats, and from so unjustly discriminating against the complainant, it prays that by an injunction the right to receive and discharge passengers and freight upon and from its steamboats at said wharf may be enforced.  The complainant concedes the right of the defendant, as owner of said wharf, to charge and collect reasonable wharfage from all vessels using the same, and consents that whatever relief may be granted to it shall be upon equitable terms, and upon such conditions as the court may impose for the protection of the defendant's rights.

The defendant's counsel, in opposition to the prayer of the bill, argues that, by conceding the right to remuneration for the use of the wharf, the

bill itself raises an insurmountable obstacle in the way of obtaining an injunction. . It is said that the fixing of rates requires the mutual assent of the parties who are respectively to pay and receive, and involves the making of a contract between private individuals respecting their individual affairs, which is wholly beyond the power of the court. This argument is made as if the controversy affected natural persons and individual rights only. But, to judge rightly, the parties must be placed in their true positions with relation to each other and to the public. The defendant is a creature of the state. Both parties are servants and agents of the public, endowed with certain attributes and powers not possessed by natural persons, and as to all matters affecting the performance of their duties and obligations to the public they stand before the court on a footing quite different from that of mere private individuals, transacting business affecting only themselves. As a railroad company, the defendant owes a duty to the public to operate its railway, and maintain stations for the convenience of all who require transportation over it. It cannot, with due regard to the character of its line as a *quasi* public highway, interfere with the coming or going of its patrons to or from any of its stations, by whatsoever vessels or vehicles may be employed for the purpose; nor can any vessel or vehicle, offering to serve the public by carrying passengers or freight to and from a railway station, be discriminated against by being excluded from sharing privileges allowed to others, without depriving the people in general of conveniences and facilities which they have a right to enjoy. *Hack, etc., Co.* v. *Sootsma,* (Mich.) 47 N. W. Rep. 667.

As owner of a wharf extending into public navigable waters, the defendant is also beholden to the state for the privilege or license enjoyed by it in being permitted to occupy the public ground covered by said wharf, and for that reason it owes a further duty to the public to maintain said wharf as an aid to commerce and navigation. Having voluntarily, by its acceptance and enjoyment of franchises and privileges, assumed the reciprocal obligation to serve the public, the defendant must perform it, and the power of the courts to enforce performance is ample. Even as between natural persons and in matters of strictly individual concern, when one person has assumed towards another a duty, although the contract between them, from which the duty arises, be incomplete and lacking in essential elements of a valid contract, courts have power to compel performance, and to determine what particular acts constitute performance. The courts have power in enforcing contracts, whenever necessary to the saving of vested rights in any case, to first give a construction to the contract, and, in doing so, to supply omissions therein. In the case at bar the court is not called upon to do more in the way of making a contract for the parties in order to grant the injunction prayed for, upon condition that the complainant pay the defendant reasonable wharfage, than would be necessary in giving a judgment upon a *quantum meruit,* in favor of a laborer, for the value of services rendered, without a previous request or promise to pay, or an agreement fixing the rate of his wages. To fix the rate of a person's wages requires the assent of the

one who is to receive and of the one who is to pay, and involves the making of a contract between individuals respecting matters personal to them, and therefore raises difficulties for a court to deal with equal to any supposed to affect this case; and yet for ages it has been the rule of the courts of this and the parent country to compel one who has knowingly permitted another to serve him without any agreement as to compensation therefor, and who retains the fruits of such service, to pay its value. In every such case the court will both imply a request and a promise, and supply the omission, by fixing definitely an amount or rate of wages.

A further argument on the part of the defendant is to the effect that the plaintiff's demand is that of a rival, to share in the use of its terminal grounds. A complete answer to this is to be found in the fact that the complainant has no railroad within the territory served by the defendant's line, and there is no competition between these two corporations except for steamboat traffic. The complainant does not ask for permission to use the defendant's premises, except to the extent necessary to secure, for passengers and freight carried by its boats, means of ingress and egress to and from one of the regular stations on the line of the defendant's railway, without being subjected to inconvenience or expense, which passengers and freight arriving at and departing from the same station by other steamboats of the same class are free from.

The defendant has attempted to show, as a further ground for opposition to the granting of the injunction, that the wharf is too small to accommodate steamboats other than its own, and that for lack of space it is impracticable for the steamboats of both companies to use said wharf as a landing place. Whether this is so or not is a controverted question of fact. I find it unnecessary, however, to pass upon it, for I find, as a matter of law, that this defense cannot avail. The defendant must provide facilities sufficient for the transaction of the business which it has undertaken, with safety, and with reasonable convenience to all of its passengers. *Stock-Yards Co.* v. *Keith,* 139 U. S. 128, 11 Sup. Ct. Rep. 461. The attempt of the defendant to maintain a monopoly in the manner complained of in this case is contrary to the principles of the common law, as well as forbidden by the national interstate commerce law, and by the constitution of this state. Rather than extend this opinion, by even referring to the numerous authorities bearing upon the questions involved, I will merely refer to the very instructive opinion of the supreme court of Florida in the recent case of *Indian River Steamboat Co.* v. *East Coast Transportation Co.,* 10 South. Rep. 480, and the cases therein cited.

It will be an easy matter for the officers of the different steamboats belonging to these two corporations to annoy and obstruct each other in doing business at said wharf, and correspondingly difficult for the court to enforce an injunction order without doing injustice to the defendant. This practical difficulty is the most serious of all the reasons suggested for not granting the order. It is possible, however, to overcome this difficulty. A competent and impartial superintendent, in charge of said

wharf, can make and enforce regulations whereby the several steamboats of each company can be sufficiently accommodated, and kept from interfering with each other. And it is, in my opinion, proper for the court to require this or equally effective means to break the monopoly complained of. Let a writ of injunction issue as prayed for.