### WEEMS STEAMBOAT CO. OF BALTIMORE, MD., v. PEOPLE'S STEAMBOAT CO. et al.

(Circuit Court, E. D. Virginia. October 17, 1905.)

WHARVES—PUBLIC CHARACTER—MONOPOLY OF USE.

A wharf built on the bank of a navigable river, not in a city or town where there are a number of others, but at the terminus of public highways in the country, or at a small place, where it constitutes the only means by which the people of the community can reach the river and use the mediums of commerce navigating the same, and which was built for such use, or is being so used, is impressed with a public interest; and a single carrier cannot, by purchasing or leasing the same, convert it into private property, so as to have the right to exclude the public or other carriers from using it for the loading or unloading of vessels on the payment of reasonable wharfage.

In Equity. On application for an injunction to restrain the use of certain alleged private wharves.

The complainant company, a corporation of the state of Maryland, the owner and operator of a line of steamers plying between the city of Baltimore, in the state of Maryland, and the city of Fredericksburg, in the state of Virginia, said route being from Baltimore down Chesapeake Bay to the mouth of the Rappahannock river, and thence up said river to Fredericksburg,

filed its bill in this cause to enjoin the People's Steamboat Company, a corporation of the state of Virginia, the owner and operator of a competing steamer to that of complainant, from allowing its steamer, the Tourist, to use certain wharves, 13 in number, on the Rappahannock river, owned or leased by the complainant company, because, as alleged, said wharves were not public wharves, but the private property of the complainants. Upon presentation of the bill, a rule was awarded requiring the defendant to show cause why the injunction prayed for should not issue; and, upon its return, affidavits in favor of and against the motion were filed; and the court thereupon, before granting the injunction, directed a reference to a special master, with a view of ascertaining the status of the said wharves. A great mass of evidence was taken, and an investigation of the titles to the property made by the special master; and, in an elaborate and able report, he concluded that all of the said wharves were either owned in fee by the complainant company, or held by it under proper leases from the lawful owners thereof; and that said wharves, one and all, were the private property of said owners, and private, as distinguished from public wharves. Exceptions were filed to this report by the defendant company and fully argued before the court; and the question for determination is whether said wharves are, in point of fact, public or private wharves. If public, the defendant has the right to the use of them as contended; whereas, if private, such right does not exist.

The Rappahannock river is one of the ancient and important waterways of the commonwealth. The distance from its points of navigability at the city of Fredericksburg, to where it empties into Chesapeake Bay, is about 120 miles; and considerable commerce is conducted upon it; and the complainants and their predecessors have for a long number of years (40 or 50) operated a line of steamers from the city of Baltimore, over said route; and on said river are located some of the oldest villages and towns in the state, notably at two of the wharves in question, Rappahannock and Port Royal, the latter place being one of the oldest. as it was at one time one of the largest ports of entry, in the commonwealth, although now it has only some few hundred inhabitants. The complainants are the owners of six of the wharves under consideration, having acquired the same from time to time during the operation of their line of steamers; and they succeeded in leasing the remaining seven of said wharves, shortly before the institution of this proceeding, and after the defendant company inaugurated its line of steamers on said river. While the said 13 wharves involved in this proceeding by no means include all the wharves or stopping places for vessels on the river, it may be said that they embrace the important wharves from which the passenger and freight business is chiefly procured, in passing up and down the river; and that the business from said wharves is large. With possibly a single exception, these wharves are at the termini of public highways in the counties in which they are respectively built; the character of the business consists of passenger travel, and merchandise received over said wharves, consisting of the general products of the country; and they are the usual shipping places of persons living in the immediate neighborhood of the wharves, and of the inhabitants of the country for some distance in the interior. That, at said wharves, United States post offices are established, at which the mail of the people for the surrounding country is procured; and that, as to the wharves leased as aforesaid, the same were leased upon a rental of a commission. of 10 per cent. of all freight charges and passenger fares collected by the complainant at said wharves, the owner of said wharves maintaining an agent there to assist in mooring the vessels of the complainants making landings there, and in receiving and forwarding freight therefrom; and at some of the wharves sail vessels from time to time moor, and lade, and unlade, making proper compensation to the owners of the wharves for their use.

H. St. George Fitzhugh and George W. Williams, for complainants.

William D. Carter and A. T. Embrey, for respondents.

WADDILL, District Judge (after stating the facts as above). While the special master is doubtless correct in his findings as to the actual ownership of the property rights in said wharves, namely, that they are the individual property of the several owners thereof, and, as such, pass regularly by the laws of descent and purchase, it by no means follows that said wharves are private as against the public; that is, either the citizens desiring to use the wharves to reach the means of transportation upon and over said river, or owners of such methods of transportation plying the waters of said river; the obligation upon each being to render and pay to the wharf owner reasonable wharfage and charges for the use of his property, under such proper and reasonable regulations as might be imposed either by law or by the owner of the property.

Wharves belong to a class of property in which the public is concerned, and as to which the government has always reserved the right, as between its citizens, to regulate and control. This has prevailed in England from time immemorial, and in this country from its earliest colonization; that is to say, the government has exercised the authority to regulate ferries, common carriers, hackmen, bakers, millers, wharfingers, innkeepers, etc. And hence this class of property, when used by the public, becomes affected with a public interest, and it ceases to be juris privati only. As was said by Mr. Chief Justice Waite, in delivering the opinion of the court and discussing the subject under consideration, in Munn v. Illinois, 94 U. S. 126, 24 L. Ed. 77:

"This was said by Lord Chief Justice Hale more than 200 years ago, in his treatise De Portibus Maris, 1 Harg. Law Tracts, 78, and has been accepted without objection as an essential element in the law of property ever since. Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he in effect grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created."

The question of what is technically a public, and what a private, wharf may be matter of some doubt; but there should be no serious question in this case as to the wharves under consideration. The Supreme Court of the United States, in Dutton and others v. Strong and others, 66 U. S. 23, 32, 17 L. Ed. 29, had under consideration this precise question, as to when piers, landing places, and wharves were private, or became public wharves, although the property in such wharves remained in the individual owner; and in apt language said:

"And whether they are the one or the other may depend, in case of dispute, upon several considerations, involving the purpose for which they were built, the uses to which they have been applied, the place where located, and the nature and character of the structure."

These wharves, it must be borne in mind, are not the landing places or piers of a line of steamers in a city, but mere wharves along the banks of a river in the country, in the main at the termini of public county roads; and hence the means, and only means, whereby the people of the community can reach the river and use the mediums of commerce navi-

gating the same.   These wharves were all built that they might be so used, and for the profit that was in the use; and they have been continually thus used, some of them yielding to the owners, because of the travel upon and over them by the public, with the complainant and others, a large return; and so long as they are thus used, as between the public and their owners, they are public, as distinguished from private wharves.   Nor does the fact that the complainant does not charge wharfage eo nomine, in its transactions with its patrons, change the character of the wharves; since they built, used, and maintained them for the public generally, who used their wharves and their steamers, paying their passage and freight money, which includes wharfage; and they cannot thereby, whether actual wharfage is charged or not, either discriminate as between the public seeking to go upon and over the wharf, or public carriers seeking to lawfully ply the waters of said river.   The complainant is a public carrier, using a public waterway; and it cannot, by the mere fact of not charging wharfage at a wharf used generally by the public, secure a right to prevent any part of the public from using the wharf upon equal terms with others.   And least of all can they cut off a competitor lawfully engaged in the navigation of such waterway from the free use thereof, and the right to have and receive the patronage of the public lawfully using such wharf, upon making or proffering proper compensation therefor.   It will be readily seen that, if the complainant could exercise such a privilege as this, it would be a simple thing for the owners of a line of steamers to acquire all the wharves on the river, and thereby subject the public to a monopoly from which there would be no escape, and deny to them the free use of the public waters of the commonwealth.   If such a thing were possible, the continued improvement of rivers and harbors by the general government would quickly cease, and the commerce of the country receive a serious setback.

The question of private ownership of wharves is fully recognized in the case of Dutton et al. v. Strong et al., 66 U. S. 33, 17 L. Ed. 29, by the Supreme Court of the United States, in this language:

"Undoubtedly, a riparian proprietor may construct any one of these improvements *for his own exclusive use and benefit;* and, if not located in a harbor, or other usual resting place for vessels, and, if confined within the shore of the sea or the unnavigable waters of a lake, *and it had not been used by others or held out and intended for such use,* no implication would arise, in a case like the present, that the owner had consented to the mooring of the vessel to the bridge pier." (Court's italics.)

That is to say, riparian owners can construct and maintain, for their own exclusive use and benefit, private wharves upon their property; and, as long as they so use them, they are not affected with a public interest; and a temporary use by another, by special arrangement with the owner, might not affect the character of such wharf.   Transportation Co. v. Parkersburg, 107 U. S. 691, 699, 2 Sup. Ct. 732, 27 L. Ed. 584. But a general or habitual use thereof by persons other than the owner will relieve the property of its private character.   No hardship would befall the owner of the private property by this interpretation, in that it could or might be claimed that it was a deprivation thereof, and the appropriation of the same to public use without proper compensation.

This phase of the question was considered by the Supreme Court of the United States in the case of Munn v. Illinois, 94 U. S. 125, 24 L. Ed. 77, and the suggestion refuted; and in this same case, the court, at page 126, 94 U. S. (24 L. Ed. 77), speaking of the owner, said:

"He may withdraw his grant by discontinuing the use; but, so long as he maintains the use, he must submit to the control."

The owners of wharves have a complete remedy within their own hands, if, in point of fact, they be private, as distinguished from public wharves. They have the right to withdraw the use of their wharves entirely from the public. But they cannot allow the latter to use the wharves, or use them themselves in their business as public carriers for the public, and discriminate between them in their use.

In what has been said, no opinion is meant to be expressed upon any question affecting the ownership of wharves and piers in cities and towns of the commonwealth, or harbors or places where there may be more than one landing place, as entirely different considerations may determine a controversy arising over such property, and under such circumstances. The fact of the existence of a different rule as to wharves like the ones in question, along the banks of a river in the country, where they may be said to be the only means of communication by the public with the waterway, from those in the harbors of cities or towns, where there are not unfrequently many and other wharves and landing places for the landing and embarking of passengers and freight, has long since been recognized; and much can be said as to the necessity for, and the wisdom of, such distinction. The location of wharves in the country, the meandering of the river, the character of the river banks, the condition of marshes along the river courses, the fact that the forests and country along the river and adjacent to such wharves for long distances might not be opened up, would one and all tend to show the reason for the existence of a different rule. This fact was recognized by Sir Mathew Hale long ago; and the Supreme Court of the United States, speaking through Mr. Justice Bradley, referring to that learned jurist, in Transportation Co. v. Parkersburg, 107 U. S. 699, 2 Sup. Ct. 739, 27 L. Ed. 584, said:

"Whether a private wharf may be maintained as such, where it is the only facility of the kind in a particular port or harbor, may be questioned."

And in treating of this subject, Lord Hale, in his treatise De Jure Maris (Hargreaves, Law Tracts, 77), says:

"A man, for his own private advantage, may, in a port or town, set up a wharf or crane, and may take what rates he and his customers can agree for cranage, wharfage, housellage, pesage; for he doth no more than is lawful for any man to do, viz., makes the most of his own. * * * If the king or subject have a public wharf, unto which all persons that come to that port must come and unlade or lade their goods as for the purpose, because they are the wharfs only licensed by the king, or because there is no other wharf in that port, as it may fall out where a port is newly erected, in that case there cannot be taken arbitrary and excessive duties for cranage, wharfage, pesage, etc., neither can they be enhanced to an immoderate rate; but the duties must be reasonable and moderate, though settled by the king's license or charter. For now the wharf and crane and other conveniences are affected with a public interest, and they cease to be juris privati only; as

if a man set out a street in new building on his own land, it is now no longer bare private interest, but is affected by a public interest."

This quotation from Lord Hale has been referred to approvingly by the Supreme Court of the United States at least twice—in the case of Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, and Transportation Co. v. Parkersburg, 107 U. S. 699, 2 Sup. Ct. 739, 27 L. Ed. 584. Reference may also be had to Gould on Waters (3d Ed.) § 119; Barrington v. Commercial Dock Co, (Wash.) 45 Pac. 748, 33 L. R. A. 116, and cases there cited; Oregon Short Line v. Ilwaco Ry. & Nav. Co. (C. C.) 51 Fed. 611; Indian River Co. v. E. C. Transportation Co. (Fla.) 10 South. 485; Sherlock v. Bainbridge, 41 Ind. 35, 13 Am. Rep. 302.

The array of authorities cited by the complainant in support of its several contentions, and which largely treat of the rights of riparian owners to the status of wharf property in cities and towns, and ports where there are more than one wharf, and the title to private property in wharves, have been carefully considered by the court; and, while some of the cases apparently conflict with the views herein expressed, the court feels controlled by the authorities relied upon as the basis of this decision.

The conclusion of the court is that the injunction asked for should be refused, at the cost of the complainant.