COMMERCIAL WHARF COMPANY *vs.* AUGUSTUS WINSOR
& others.

Suffolk.    January 26, 1888. — May 3, 1888.

Present: MORTON, C. J., FIELD, DEVENS, W. ALLEN, C. ALLEN, HOLMES,
& KNOWLTON, JJ.

*Indenture — Covenant — Equity Pleading — Parties — Statute.*

A covenant in an indenture between the owners of adjacent wharves as to the use
of an intervening dock, beneficial to the covenantee and restricting its use by
the covenantor, is enforceable in equity by a grantee of the covenantee against
a lessee of the covenantor with notice; and the covenantor is a proper party
defendant.

An indenture between the owners of C. Wharf and T Wharf established an inter-
vening dock over their flats as far as low-water mark, and provided that a part
of the dock should be kept open as a common passageway. Mutual covenants
provided that they should not "obstruct or incumber said common highway or
passageway, or any part thereof, nor authorize or consent that the said highway,
or any part of it, shall be obstructed or incumbered in any manner." Subse-
quently C. Wharf was conveyed by a deed bounding it at low-water mark, and
both wharves were extended to a new line by statutes, referring to the common
passageway as a boundary only, and providing against an impairment of the
rights of either owner thereby, the statute as to T Wharf, however, giving its
owner "the right and privilege of using and occupying the flats adjacent to said
wharf so extended at the end and sides thereof in the same manner in which
they have hitherto occupied and enjoyed the flats and docks adjoining said
wharf as it now is." The owner of T Wharf leased it, and the lessees author-
ized and consented to vessels so lying thereat as to project into the common
passageway. *Held*, that the grantee of C. Wharf was entitled to maintain a
bill in equity against the owner and lessees of T Wharf to restrain such use of
the common passageway above, but not below, low-water mark.

BILL IN EQUITY to restrain the defendants, who were the les-
sees and owners of T Wharf, from using a common passageway
between the private docks of Commercial Wharf and T Wharf
as a berth for vessels. The defendants demurred to the bill,
among other grounds, for want of equity, and because the owners
of T Wharf were not proper parties. Hearing before *Gardner*,
J., who made certain findings of fact, and reserved the case for
the consideration of the full court. Certain plans were used at
the hearing, a copy of so much of which as is material appears
in the margin of the next page. The case was argued at the bar

in January, 1888, and afterwards was submitted on briefs to all the judges. The facts appear in the opinion.

G. O. Shattuck & J. C. Ropes, for the plaintiff.

E. R. Hoar & J. D. Bryant, for the owners of T Wharf.

J. O. Teele, for the lessees.

W. ALLEN, J.   This is a bill to enforce covenants made by the owners of T Wharf with the Mercantile Wharf Corporation, contained in a tripartite indenture made by the city of Boston, the Mercantile Wharf Corporation, and the owners of T Wharf, on December 3, 1830.   The object of the indenture was to establish and to regulate the use of a dock over flats owned by the parties, for the benefit of their adjoining lands and wharves. The dock as established extended from the harbor channel westerly to Commercial Street, a distance of about twelve hundred feet.   The greater part of the dock has since been filled up, and only five or six hundred feet of the easterly part as established remains.   T Wharf extended the whole of this distance on the southerly side of the dock.   Commercial Wharf, which belonged to the Mercantile Wharf Corporation, and has since been conveyed by it to the plaintiff, extended on the northerly side of the

dock for the distance of about one hundred and fifty feet from the harbor channel.

By the indenture a portion of the dock eighty feet in width was to be kept as a "common highway or passageway" for the use of the parties for the purpose of going to and from their respective wharves. The part of the dock between the common passageway and the southerly line of the dock, on which was T Wharf, was to be the private dock of the owners of T Wharf, and the part between the common passageway and the northerly line of the dock, on which was Commercial Wharf, was to be the private dock of the Mercantile Wharf Corporation. The whole width of the dock was one hundred and eighty-five feet, thirty feet of it being the dock of T Wharf, eighty feet the common passageway, and seventy-five feet the dock of Commercial Wharf. The indenture provided in regard to the common highway or passageway that it should forever be kept open and unincumbered for the use of vessels passing to or from the respective wharves of the parties; that the owners of T Wharf should have no right of anchorage, wharfage, or dockage, in any part of the dock except the thirty feet next their wharf; and the owners of T Wharf covenanted with each of the other parties that they would not "obstruct or incumber the said common highway or passageway, or any part thereof, nor authorize or consent that the said highway, or any part of it, shall be obstructed or incumbered in any manner," with an exception which is not material. Corresponding provisions and covenants were made in respect to and by the Mercantile Wharf Corporation; and there were provisions and covenants in regard to the use of the private docks of the respective parties. These covenants of the owners of T Wharf with the Mercantile Wharf Corporation were clearly for the benefit of the land of the covenantee, and put a restriction in favor of that land upon the use by the covenantors of the common passageway, which can be enforced by the grantee of the covenantee against the grantees with notice of the covenantors. *Whitney* v. *Union Railway*, 11 Gray, 359. *Long Wharf* v. *Central Wharf*, 14 Allen, 271.

The plaintiff is a grantee, by a recorded deed, from the Mercantile Wharf Corporation, of a parcel of the land for the benefit of which the covenants were made, and is entitled to enforce the

covenants and restrictions, as far as they are for the benefit of that part of the land, against the defendants, who, as lessees and owners, hold the estate of the covenantors to which the restrictions attach.

The evidence sustains the finding of the justice who heard the case, that it has been frequent that vessels two and three tiers deep have lain at T Wharf, attached to it or to that vessel nearest the wharf, all but the inner tier of which have been within the common highway or passageway, and that this has been authorized and consented to by those of the defendants who are the lessees of the wharf. If they allowed vessels moored in that way to discharge at their wharf, and took wharfage therefor, they cannot be permitted to say that they did not authorize or consent to that mode of using their wharf. They thereby asserted a right in the flats under the common passageway which was not the public right of navigation over them, but the private right of wharf-owners to the exclusive occupancy of them by vessels moored to or discharging at the wharf, such as might work a disseisin of an owner of them. See *Tufts* v. *Charlestown*, 117 Mass. 401, and cases cited. By allowing vessels to lie at their wharf in the manner shown by the evidence, the defendants clearly violated the covenants of the indenture. It does not appear that the plaintiff suffered any damage or inconvenience from vessels so lying on the flats included in the indenture ; but the proper method in which the plaintiff can vindicate its right, which is infringed and denied by the defendants, is by a suit in equity, and it is therefore entitled to a decree in order to preserve its rights. There is no evidence to sustain the defence that the plaintiff by its conduct has waived its rights, or estopped itself from asserting them. The owners of T Wharf are proper parties defendant to the bill, as the rights of their lessees under the lease are involved.

The plaintiff contends that the restrictions of the indenture apply not only to the land described in it, but to the space between T and Commercial Wharves as they were extended beyond low-water mark after the indenture. The dock established by the indenture was bounded easterly by the edge of the harbor channel, which was a fixed line, and, it is agreed, was at low-water mark. The deed from the Mercantile Wharf Corporation

to the plaintiff extended to and bounded definitely and expressly on this line. T Wharf and Commercial Wharf extended to this line. The statute which incorporated the plaintiff, and authorized the purchase by it of Commercial Wharf, authorized the extension of the wharf below low-water mark to a certain line (St. 1832, c. 51), and by a statute passed on the same day T Wharf was authorized to be extended to the same line (St. 1832, c. 57). Subsequently, by the St. of 1837, c. 229, the line of the harbor was established still farther to the east, beyond low-water mark, and it was provided that no wharf should ever be extended beyond that line, and that none should be extended towards it, unless under authority already given, without leave of the Legislature. Both of the wharves were subsequently extended to that line, under the St. of 1839, c. 25, and the St. of 1839, c. 77. The extensions of Commercial Wharf were considerably more than the length of the wharf on the dock before the extension. The plaintiff contends that the space between the wharves as extended beyond low-water mark is subject to the agreements, covenants, and restrictions of the indenture. This certainly cannot be by force of the indenture.

Even if the extension had the effect to give to the respective owners of the wharves the title to the flats between the wharves as extended, it could not thereby extend the covenants of the indenture over such newly acquired property. But the authority to extend the wharves gave no title to the flats not occupied by them when extended. The establishment of the new harbor line did not carry out low-water mark, and the line of private ownership remained as it had been, at the old line of the harbor channel. The only private right either party had within the harbor channel was that given it by the statutes authorizing the extension of its wharf, namely, a right to extend into the harbor channel, within certain lines, a wharf built on piles ; and to the plaintiff the right to lay vessels at its wharf, (Sts. 1832, c. 51; 1839, c. 25,) and to the owners of T Wharf " the right and privilege of using and occupying the flats adjacent to said wharf, when so extended at the end and the sides thereof, in the same manner in which they have hitherto occupied and enjoyed the flats and docks adjoining said wharf as it now is." Sts. 1832, c. 57 ; 1839, c. 77. These provisions do not give to the owners of T Wharf any private right to the flats between the extended

wharves beyond thirty feet from their wharf to which the cove-
nants and restrictions of the indenture could attach.

The plaintiff argues that, by force of the acts authorizing the
extensions of the wharves, the dock and common passageway pro-
vided for in the indenture of 1830 are extended, with the cove-
nants and restrictions of the indenture relating to them; and that
the acts of extension were accepted by the owners of T Wharf
subject to that condition. The St. of 1832, c. 51, incorporated
the plaintiff as the Commercial Wharf Company and authorized
it to hold certain real estate described, which included Com-
mercial Wharf, and to extend the wharf to a certain line in the
harbor channel. The real estate it was authorized to hold was
bounded easterly " by that part of the harbor channel to which
said company is hereby authorized to extend their wharves," and
southerly by the common highway in the dock established by
the indenture of 1830. The act authorized the extension of the
wharf into the harbor or channel as far as a described line, and
provided that no wharf should be built in the channel except-
ing on piles, and parallel with the line of the dock or common
passageway established by the indenture of 1830. Similar pro-
visions are in the act authorizing the second extension of Com-
mercial Wharf. St. 1839, c. 25. No other mention is made of
the dock or common passageway in any of the acts authorizing
extensions of the wharves. The plaintiff never acquired any
real estate below low-water mark, except the rights given by the
statute authorizing its extension.

The language of the act authorizing the extension of T Wharf
(St. 1832, c. 57) is, that it shall be " extended within the lines of
said wharf, as it now exists, continued easterly to the limit afore-
said." The first act authorizing the extension of T Wharf con-
tained the proviso that " nothing herein contained shall have the
effect to enable said proprietors of said T Wharf, their heirs or
assigns, to violate any covenants or engagements they have made
or entered into with any person or persons, or bodies corporate,
and which are now subsisting, nor to infringe the rights or es-
tates of any person or persons whomsoever." St. 1832, c. 57.
The similar provision in the second act for the extension of T
Wharf is, that " nothing herein contained shall impair the rights
of any other persons whatever." St. 1839, c. 77. The provis-
ions in the acts for the extensions of Commercial Wharf are,

that " nothing herein contained shall be construed to authorize the said company to lessen or injure the rights or property of the owner or owners of any wharf or wharves adjoining those of said company," (St. 1832, c. 51,) and that " nothing herein contained shall in any way interfere with the legal rights of the owner or owners of any wharf or wharves adjoining that of said company." St. 1839, c. 25. The purpose of all these provisions, which in substance are commonly found in acts of the kind, is to preserve existing covenants, engagements, rights, and estates, not to enlarge them nor to create new ones. The suggestion that these provisions amount to enactments, or conditions, that the dock and common passageway which had been established by the owners of the respective wharves and another party over flats which were their private property, and the mutual covenants and restrictions of the parties relating thereto, should be extended and applied to the public waters between the extended wharves, probably arose from the somewhat peculiar language of the provisions in the first act extending T Wharf. But the language does not indicate the intention, and will not bear the meaning suggested. The other provisions are not capable of such a construction, and to give that meaning to this provision and not to the others, and to hold that the Legislature intended by it to extend the covenants of the owners of T Wharf in regard to the common passageway above low-water mark to the flats below low-water mark, is to find the intention that such covenants and rights, mutual in the indenture, should be extended only in favor of the Commercial Wharf and against T Wharf, and is a construction which cannot be entertained.

The covenants of the indenture do not apply to any flats below low-water mark, and the damages sustained by the plaintiff by the occupation and obstruction of the flats below low-water mark by the occupants of T Wharf are not in consequence of any violation of the covenants of the indenture for which the plaintiff seeks redress. The result is, that the plaintiff is entitled to a decree enjoining the defendants against laying vessels at their wharf within the common passageway, with the exception mentioned in the indenture, westerly of the harbor channel as it was at the time of the indenture. The decree must be settled by a single judge. *Decree for the plaintiff.*