J. FRANK WELLINGTON *vs.* CITY OF CAMBRIDGE.

Middlesex.    November 22, 1912. — February 26, 1913.

Present: RUGG, C. J., HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Practice, Civil,* Exceptions.    *Ship.    Dock.    Deed,* Construction.    *Eminent Domain.*

At the close of the evidence at the trial of a proceeding at law, the presiding judge, in the absence of the jury, discussed with the counsel the rulings asked for by one of the parties and told the counsel that he should give as instructions certain of the rulings, and thereupon the counsel for the adverse party stated that he wished his exception recorded to the judge's "acquiescence" in those rulings.

In his charge to the jury the judge gave in substance the rulings referred to, but no further exception was taken. *Held,* that the objecting party excepted to the part of the charge which in substance adopted the proposed rulings thus excepted to.

Whether the public right of navigation includes a right of a shipowner to have his vessel, while lying in the waters of a private dock open to the sea, overlap an adjoining wharf on the same private dock, here was referred to as a question which it was not necessary to decide.

Apart from the public right of navigation, the right of a wharf owner to lay vessels at his wharf is confined to the side lines of his property, and he has no property right to have vessels lying at his wharf project beyond such side lines and occupy under any circumstances the wharf front of an adjoining proprietor, unless such a right has been acquired by grant or prescription.

A deed of one of a number of wharves adjoining a private dock opening upon the Charles River contained the following words: "Together with the privileges of a dock one hundred feet in width on the southwesterly side of the afore-granted premises, said dock to be kept open forever for the common use and benefit of the owners and occupants of the land or wharves on either side and at the head thereof." *Held,* that this provision was intended to secure to such owners and occupants free passage between their respective wharves and the Charles River and so to the sea, and that it did not include a right for one wharf owner to use the wharf front of another either in whole or in part.

Where a statute authorizes a city to construct a bridge with a suitable draw across a private dock, and does not require such city to make a written statement of what is taken by it under the statute, a taking consists in doing acts under and authorized by the statute; or at any rate such acts may be treated as a taking by a person whose property thus is appropriated.

Where the owner of a private dock or canal and of the land on both sides of it conveys a lot of land, describing it in the deed as bounded by the dock, the title of the grantee goes to the centre line of the dock.

PETITION, filed on May 7, 1908, against the city of Cambridge under St. 1903, c. 372, § 4, for the assessment by a jury of damages for injury to property of the petitioner from the construction of a bridge with a draw across the Lechmere Canal, so called, in continuation of the lines of the highway known as Commercial Avenue.

At the trial in the Superior Court before *Hitchcock,* J., the jury found for the petitioner and assessed damages in the sum of $15,365.61. The respondent alleged exceptions, raising the questions stated in the opinion. A reduced copy of the plan there referred to is printed on page 37.

*J. F. Aylward,* (*F. M. Phelan* with him,) for the respondent.

*E. C. Jenney,* (*S. Robinson* with him,) for the petitioner.

LORING, J. This is a petition brought to recover compensation for injury done to the property of the petitioner by the construc-

tion of a bridge across Lechmere Canal, so called. The bridge was constructed by the respondent under St. 1903, c. 372.

Lechmere Canal is not a canal but a private dock. The statement of the facts contained in the bill of exceptions as to the original laying out and construction of the dock is somewhat meagre. As we understand it the facts are these: At some time before October, 1834, a corporation by the name of the Proprietors of the Canal Bridge owned certain flats (situated within the line of private ownership) bordering on Charles River in which the tide ebbed and flowed. On the flats they laid out a private dock one hundred

Boston Oct 20th 1834
Alex. Wadsworth Surveyor

feet wide, running not far from east and west, at right angles to the river, and sold the land on both sides of the dock. The petitioner is the owner of lot 26 shown on the plan of that date here printed. The bridge was built on the easterly side line of his lot. This lot 26 had been used for more than thirty years as a coal wharf. Coal came to the petitioner in barges which "averaged about two hundred feet in length," and had four hatches. The coal was unloaded by a tower which travels back and forth on the petitioner's wharf.. In order to maintain the equilibrium of the barge while the coal is being unloaded, it is necessary to use the four hatches successively, taking a small amount of coal from each and repeating the operation until the entire cargo is unloaded. Before the building of the bridge this was effected by moving the barge backward and forward, although in doing so it had to overlap and did overlap the side lines of the petitioner's wharf,

which is one hundred and sixty feet wide only. But since the building of the bridge a barge cannot be moved beyond the petitioner's easterly side line, with the result that only two of the four hatches can be used and the equilibrium of the barge has been maintained by trimming, that is, by shovelling the coal which under former conditions would have been removed from the other two hatches. There was evidence that the expense of such trimming and shovelling would amount to about $2,000 a year, and that in addition the petitioner would suffer further damages by reason of demurrage charges for delay in unloading. This is the principal damage complained of by the petitioner.

There was evidence that the several wharf owners had exercised the right of overlapping for more than thirty years, claiming it as a right. But the presiding judge, in place of submitting to the jury the right of the petitioner to overlap as a question of fact dependent upon prescription, instructed them in these words: "The right to use a navigable stream or a navigable canal like this would be very similar to the right to use a public highway. That is, we have the right to use any part of it as may suit the convenience, or in some cases the pleasure, of the person using it. That right, however, must be used in connection with the right of other people, to do the same thing, other persons, parts of the public; and if it be on a private canal, other owners upon the canal should have the same right to use it as any person may seek to do. And that would include the right to use it in the ways that such canal or navigable water is ordinarily used, and if, for the purpose of unloading ships or vessels, it were necessary to lie by or to overlap near to or in front of the adjoining property a person having the right to use the canal or navigable water for that purpose would have the right to lie by or to overlap so far as it is reasonably necessary for his own use of his own land. And that would have, of course, to be exercised in common with the right of other persons to do the same thing. And, as is said in reference to the use of highways, there are mutual obligations among those who . . . [use] . . . them, so it may be said with reference to a navigable stream or navigable canal, that there would be mutual obligations to be exercised on the part of persons who might have occasion to use the same."

A preliminary question has been raised by the petitioner as to

whether an exception was taken to this ruling. At the close of the evidence the presiding judge, in the absence of the jury, discussed with counsel certain rulings asked for by them. During or at the end of that discussion, the judge told the counsel that he should give the first and sixth rulings, among others, asked for by the petitioner * which were in substance given in that part of his charge stated above. Thereupon the counsel for the respondent stated that he wished his exceptions recorded to the judge's "acquiescence" in those rulings. No other exception was taken by the respondent. We are of opinion that this amounted to an exception to that part of the charge which in substance adopted the proposed rulings thus excepted to.

It seems as matter of authority that wharfage cannot be charged if the defendant's vessel, lying in public waters, under reasonable circumstances overlaps the plaintiff's wharf when attached to an adjoining wharf. *The Davidson,* 122 Fed. Rep. 1006. That there is such a right of overlapping, see *Original Hartlepool Collieries Co.* v. *Gibb,* 5 Ch. D. 713; *Sherlock* v. *Bainbridge,* 41 Ind. 35. See also in this connection *The Steamship Cornwall,* 10 Ben. 108; *The Lizzie E.,* 30 Fed. Rep. 876; *The Gem,* Brown, Adm. 37; *The Hercules,* 28 Fed. Rep. 475. While the contrary was held by Morris, J., in *The Wm. H. Brinsfield,* 39 Fed. Rep. 215 (affirmed by the same judge in *Ranstead* v. *Fahey,* 44 Fed. Rep. 805), in case of a private dock. In *Braisted* v. *Denton,* 115 Fed. Rep. 428, it was held that the defendant had to pay the plaintiff for vessels owned by him "stored" in the private waters of the plain-

---

* The first and sixth rulings asked for by the petitioner were as follows:

"1. The petitioner had a legal right in the discharge of a vessel or vessels at his wharf to lie by and lap over upon the adjoining wharf or wharves for a reasonable time and exercising reasonable dispatch in the discharge of the vessels."

"6. The language in the deed to the petitioner's predecessor in title which is recorded with Middlesex Registry of Deeds, book 336, page 439, containing the right in the following words: ' together with the privileges of a dock one hundred feet in width on the southwesterly side of the afore-granted premises, to be open forever for the common use and benefit of the owners and occupants of the lands and wharves on either side and at the head thereof,' is a legal grant and gives the petitioner in common with others, the right in the discharge of cargo to lie by and lap over the adjoining wharves, under reasonable circumstances and conditions, while in the discharge of a cargo."

tiff's "slip or basin." The use made there was not a temporary use nor the use of overlapping.

The distinction would seem to be well taken. For the right affirmed in *The Davidson, Original Hartlepool Collieries Co.* v. *Gibb,* and *Sherlock* v. *Bainbridge, ubi supra,* is the right to have a vessel lie at anchor or otherwise in public waters as an incident of and included in the public right of navigation. See in this connection *Gray* v. *Bartlett,* 20 Pick. 186. And it would seem (as held in *The Wm. H. Brinsfield, Ranstead* v. *Fahey,* and *Braisted* v. *Denton, ubi supra,*) that there is no right for a vessel to lie in a private dock, at any rate under ordinary circumstances. See in this connection *Commercial Wharf Co.* v. *Winsor,* 146 Mass. 559; *Long Wharf* v. *Central Wharf,* 14 Allen, 271.

But it is not necessary now to decide whether the public right of navigation does or does not include a right for a vessel to lie in the waters of a private dock which is open to the sea, and so to overlap an adjoining wharf in the private dock. It is not necessary to decide that because the right of overlapping, where there is such a right, is in our opinion the right of the vessel, not of the wharf owner. Apart from the right to have a vessel lie at anchor or otherwise in public waters as part of the public right of navigation, there is no right to overlap. The wharf owner's right to lay vessels at his wharf is confined to the side lines of his property. He has no property right to have vessels lying at his wharf overlap its side lines and occupy under any circumstances the wharf front of his neighbor.

It follows that unless the petitioner had acquired that right by grant, the presiding judge was wrong in telling the jury that the ownership by him of lot 26 included a right to have vessels lying at that wharf overlap adjoining wharves. There was evidence that the petitioner had gained such a right by prescription. But that was a question of fact and the presiding judge told the jury that as matter of law the petitioner had that right.

The petitioner has contended that such a right was included in the grant to his predecessor in title which was in these words: "Together with the privileges of a dock one hundred feet in width on the southwesterly side of the afore-granted premises, said dock to be kept open forever for the common use and benefit of the owners and occupants of the land or wharves on either side and at

the head thereof." But we are of opinion that the "common use and benefit of the owners and occupants of the land or wharves on either side and at the head thereof" was intended to secure free passage between their respective wharves and Charles River and so to the sea, and that it did not include a right for one wharf owner to use the wharf front of another either in whole or in part. See in this connection *Central Wharf* v. *India Wharf*, 123 Mass. 567, 570.

The exception to the part of the charge stated above in which the judge in effect told the jury that the petitioner's ownership in lot 26 included the right to overlap must be sustained.

The case must go back for a new trial, and we proceed to dispose of a question raised here which will be material there.

In addition to the injury which had just been discussed, the petitioner made another claim which has been questioned by the respondent. It appeared in evidence that in building the bridge the respondent had driven into the bed of the dock opposite the petitioner's wharf "certain piles which extended for a distance of ten feet from the abutment of the bridge." We assume, although it is not so stated in the exceptions, that these piles were placed there for use in warping vessels out of or into the draw of the bridge. St. 1903, c. 372, did not require the respondent to make a written statement of what was taken by it under the statute. In such cases the taking consists in doing acts under and authorized by the statute. The erection of the piles was a taking under the act, or, at any rate, the petitioner at his election could treat it as such under the doctrine of *Bailey* v. *Woburn*, 126 Mass. 416, and *Cowdrey* v. *Woburn*, 136 Mass. 409. The cases on both points are collected and the matter discussed in *Gloucester Water Supply Co.* v. *Gloucester*, 179 Mass. 365, 374, 378.

We are of opinion that the title of the petitioner went to the centre line of the dock. It is stated in the bill of exceptions that: "A former common owner of all the land comprising the dock or canal and all the flats on both sides thereof, conveyed to divers grantees the lots of land abutting on the dock or canal by metes and bounds." By the deed to the petitioner's predecessor in title the lot conveyed to him was bounded "southwesterly by said dock." Lands bounded by a private dock laid out by the owner of the land covered by the dock and of the land adjoining the dock stand on the

same footing as land bounded on a private way laid out by the owner of the land covered by the way and of the adjoining land. A deed of a lot of land bounded on such a way goes to the centre of the way although (1) the land is conveyed as a specified lot on a plan (referred to in the deed) which is delineated as stopping at the side line of the street, and although (2) the length of the side lines of the lot stop at the side line of the way. That was decided in *Gould* v. *Eastern Railroad*, 142 Mass. 85. The lot conveyed in *Whitman* v. *Boston & Maine Railroad*, 3 Allen, 133, was a single lot bounded on a real canal. A conveyance of a single lot bounded on what was or had been a canal stands on a different footing from the conveyance of all the lots bounding on a private dock in which the original owner has no interest when all the lots have been sold.

The piles having been erected by the defendant on the petitioner's land, he is entitled to all damage thereby caused to any and all of his property.

We express no opinion on the question whether, without regard to a property right to have vessels lying at his wharf overlap his neighbors' wharves, the petitioner can recover under the doctrine of *Hyde* v. *Fall River*, 189 Mass. 439.

The entry must be

*Exceptions sustained.*