## J. FRANK WELLINGTON *vs.* CITY OF CAMBRIDGE.

Middlesex.    January 18, 1915. — February 26, 1915.

Present: RUGG, C. J., LORING, BRALEY, CROSBY, & PIERCE, JJ.

*Dock. Easement,* By prescription. *Practice, Civil,* Judge's charge. *Damages,* For property taken or impaired under statutory authority. *Evidence,* Of damage to property.

The owner of a wharf adjoining a private dock, who holds by deed the title only to the part of the dock that would be enclosed by the projection of the side lines of his wharf to the centre of the dock, by continuing for more than twenty years under a claim of right the practice of having the forward hatches of vessels unloading coal at his wharf overlap the adjoining wharf by more than two thirds of the vessels' length without interfering with any right of the public in navigable waters, acquires an easement by prescription in the part of the dock beyond the limits of the land described in his deed, so that, when his wharf and his interest in the dock are taken by a city under statutory authority for the construction of a bridge, he is entitled to have included in his damages compensation for his right to overlap the adjoining wharf when unloading vessels.

A presiding judge in charging a jury may use illustrations to enable the jury more fully to understand and apply the law governing the case as stated to them by the judge. At the trial of a petition for the assessment of damages for the taking by a city under statutory authority of a wharf and a portion of a dock and certain easements in the dock belonging to the petitioner, where the presiding judge, in illustrating the nature of the special and peculiar damage alleged to have been sustained by the petitioner in regard to access to his wharf, made use of the example of a hole in a highway which caused to all the public the inconvenience of passing round the hole and to a man who fell into it and broke his leg a special and peculiar damage, it was *held,* that the illustration and its application were proper.

A statement in the charge of a presiding judge that "the case will undoubtedly go to the Supreme Court" and a statement that the meaning of a certain special statute "will be ultimately for the Supreme Court," were held in the present case not to exceed the discretionary powers of the judge as to the mode in which the attention of the jurors should be directed to the importance of the questions presented, where it was apparent that no rule of law was stated incorrectly and that the attention of the jury was not turned aside from the issues which they were to determine.

Upon a petition for the assessment of damages for property taken for a public purpose under statutory authority, the jury may consider any and all uses to which the property could be appropriated properly, and the determination whether any use to which it is testified that it could be put is too indefinite and prospective to be considered by the jury is largely within the discretion of the presiding judge.

Where, at the trial of a petition for the assessment of damages for the taking by a city under statutory authority of a wharf and a portion of an adjoining dock and certain easements in the dock belonging to the petitioner, including the right to have the forward hatches of vessels unloading coal at the wharf overlap the adjoining wharf by more than two thirds of the vessels' length, it is within the discretion of the presiding judge to admit evidence offered by the petitioner as to the estimated annual cost of trimming coal between the forward and middle hatches to the rear hatch of the coal barges before they could be unloaded and to show that because of the loss of time thus caused the petitioner also would lose the premium paid by the transportation companies for the speedy discharge of cargoes.

PETITION, filed on May 7, 1908, against the city of Cambridge under St. 1903, c. 372, § 4, for the assessment by a jury of damages for injury to property of the petitioner from the construction of a bridge with a draw across the Lechmere Canal, so called, in continuation of the lines of the highway known as Commercial Avenue.

In the Superior Court the case first was tried before *Hitchcock*, J. The jury found for the petitioner in the sum of $15,365.61, and exceptions alleged by the respondent were sustained by this court in a decision reported in 214 Mass. 35.

There was a new trial of the case before *Fessenden*, J., at which the evidence was presented that is described in the opinion. The jury and the presiding judge also viewed the petitioner's premises.

At the close of the evidence the respondent asked the judge to make the following rulings, which are referred to in the opinion, besides others that have become immaterial because the exceptions to the refusals to make them were not argued:

"6. The occasional tying up of a vessel in front of the peti-

tioner's wharf in such a manner that vessels lapped over beyond the side lines of the petitioner's land does not as a matter of law give to the petitioner a title by prescription in the part of the dock thus occupied."

"10. Upon all the evidence, the jury would not be warranted in finding that the petitioner had a title to the dock or any part thereof in front of Smith's wharf."

"12. If the jury find that it was the custom among the owners of the various wharves abutting on Lechmere Canal to permit vessels lying at their respective wharves to lap over upon the land of their abutters and that this custom had been followed for a number of years without objection from any of the wharf owners, and if the jury find that vessels unloading at the petitioner's wharf were permitted to lap over and by virtue of this custom without any express permission and without any express objection upon the part of the owners of the Smith Wharf, then the jury would not be warranted in finding that the property of the petitioner was damaged by the deprivation of the opportunity of permitting vessels to thus lap over."

"14. Upon all the evidence, the jury would not be warranted in finding that the petitioner had acquired any title by prescription in any part of the dock beyond the limits of the land described in his deed."

The judge refused to make the fourteenth ruling requested, and, as is held by the court, covered the subjects of the sixth, tenth and twelfth rulings requested, in so far as they were applicable, by the instructions that are quoted in the opinion.

The language used by the judge in his charge to the jury in illustration of the special and peculiar damage with reference to access to the use of the petitioner's wharf, which is referred to in the opinion, was as follows:

"I think I ought to speak to you a moment about what constitutes special and peculiar damages. . . .

"Suppose you are going along a highway, and I have been foolish enough, as they sometimes do in small country towns, to go out and undertake to do something in the highway; I have not got permission, but have gone out and dug a hole there, and you are going along and you see it and you pass around it, go around. You are bothered. You cannot bring an action against me for

that, because everybody else does that, all the people that have the right to use the highway have that kind of an annoyance. You can go to the grand jury and say something to them and then they will say something to me, but so far as any recovery for any damage such as that, that is not special and peculiar to you. Everybody suffers that as he goes along there. Now you can all see that. Suppose you should go along there tonight and fall into the hole and break your leg; that is a special and peculiar damage, that is to you. The public generally does not suffer that. That illustration serves to show what I mean, the distinction between a special and peculiar damage and the damage that is suffered by the public generally. Apply that to this case, for these rules cover all the cases, they are not made one for one; we do not make one set of rules for one case and another one for another; only we apply them according to the circumstances of the case.

"Wherein has the petitioner suffered special and peculiar damages? He says that before this bridge was constructed, they could bring up vessels there to the wharf two hundred feet long, or less or more, and they could have them brought to the wharf and they could unload and move the vessels fore and aft so as to take the first, second or third hatch, they could go directly to the wharf, it was convenient and accessible. He says all the others can do that now, 'But I cannot; whereas when the vessels came through, they go to the other wharves, they keep right along, can tie up, move forward and aft just the same as they could before. I cannot. I cannot get to the wharf without going ahead and then backing. In other words, my wharf is not so accessible and I am cut off entirely from this movement fore and aft, and that I have suffered damage that way, and ice collects there in a way that it does not on the other wharves; the ice collects there at a time when I want to use it, and I suffer in that respect a special and peculiar damage.' And it is for that, among other things, it is something that he does not suffer in common with the others, but it is something that he suffers and the others do not; it is special and peculiar, different in kind from what the others suffer. Now, you may consider that."

The references to this court in the judge's charge, referred to in the opinion as complained of by the respondent, were as follows:

"I may take a little time with this, gentlemen, but the case will undoubtedly go to the Supreme Court, and inasmuch as I have had between seventy and eighty separate and distinct requests for rulings to give, you see I must treat them as they deserve;" and later in the charge "I do not think we can say that this act of the Legislature is an idle act, that it means nothing, but I think the proper construction of it is — and this will be ultimately for the Supreme Court, I may be mistaken, but we will govern ourselves accordingly here —" [Here followed the judge's statement of the meaning of St. 1903, c. 372, entitled "An Act to authorize the city of Cambridge to construct a bridge across Lechmere Canal in continuation of Commercial Avenue in that city," which was not excepted to].

The jury returned a verdict for the petitioner, and assessed damages in the sum of $41,065.85. The respondent alleged exceptions to the refusal of the judge to make the rulings requested by it, to certain rulings as to the admission of evidence which are mentioned in the opinion and to certain portions of the charge, including the language of the judge used in illustration as quoted above.

*J. F. Aylward,* (*F. M. Phelan* with him,) for the respondent.

*E. C. Jenney,* (*S. Robinson* with him,) for the petitioner.

BRALEY, J. It was held in *Wellington* v. *Cambridge,* 214 Mass. 35, that while the petitioner had acquired no right by grant to have vessels anchored at his wharf overlap other wharves bordering on the canal, there was evidence that such right had been gained by prescription. The evidence at the second trial, that for at least twenty-eight years the forward hatches of vessels while unloading coal would overlap the adjoining wharf by more than two thirds of their length, was sufficient to warrant the jury in finding the acquisition of an easement by prescription which did not interfere with any right of the public in navigable waters. *Tufts* v. *Charlestown,* 117 Mass. 401. *Commercial Wharf Co.* v. *Winsor,* 146 Mass. 559, 562. *Wellington* v. *Cambridge, supra.* The respondent's fourteenth request accordingly could not be given, and the sixth, tenth and twelfth requests in so far as applicable, were covered by the clear, full and accurate instructions, that "if you find that his predecessors in title and he, either jointly or separately, gained this right to overlay by an uninterrupted, open, continuous, adverse use under a claim of right, ac-

quiesced in by the other side, and that it was for twenty years or more, that is sufficient and it is as good as if a deed had been passed giving it to him, and the burden is upon the plaintiff to establish this by a fair preponderance of the evidence." *Whitney* v. *Wheeler Cotton Mills,* 151 Mass. 396. *Wishart* v. *McKnight,* 178 Mass. 356. *Graves* v. *Broughton,* 185 Mass. 174, 176, 177.

The failure to give the respondent's remaining requests as formulated not having been argued, they are to be treated as waived, and the other exceptions to the instructions as saved and argued are confined to the language used by way of illustration in defining the damages suffered by the petitioner arising from the restricted access to the wharf caused by the piling and the northerly abutment of the bridge resting upon land formerly covered by a portion of the wharf and the bed of that part of the canal in which he owned the fee. R. L. c. 48, § 16. St. 1903, c. 372. The jury on abundant evidence could find, that, while vessels at other wharves could be docked and so moved fore and aft as to permit the cargo to be discharged from the first, second or even the third hatch, the petitioner's wharf had been rendered so inaccessible as to prevent this mode of unloading which he previously had been able to use. It was for the jury to determine the extent of this depreciation, and to assess the damages. *Bailey* v. *Boston & Providence Railroad,* 182 Mass. 537, 540. *Sheehan* v. *Fall River,* 187 Mass. 356, 361. *Cornell-Andrews Smelting Co.* v. *Boston & Providence Railroad,* 202 Mass. 585, 598, 599.

A judge in charging the jury may use illustrations to enable them more fully to understand and apply the law governing the case as given from the bench. *Commonwealth* v. *Johnson,* 188 Mass. 382, 387. The illustration was apposite, and the language used in defining such damages as distinguished from damages suffered in common with other landowners is not susceptible to the respondent's criticism that the judge showed that he was biased, but was impartial and unexceptionable.

The reference to this court, of which the respondent complains, did not, when read with the context, exceed the discretionary powers of the judge as to the mode in which the attention of jurors shall be directed to the importance of the questions presented. It is apparent that no rule of law was stated incorrectly, nor the attention of the jury turned aside from the issues which

they were to determine. *Whitney* v. *Wellesley & Boston Street Railway,* 197 Mass. 495, and cases cited.

Nor is there reversible error in the admission of evidence as to the estimated annual cost of trimming coal between the forward and middle hatches to the rear hatch of the barges before they could be unloaded, or that because of the loss of time thus caused the petitioner also would lose the premium paid by the transportation companies for the speedy discharge of cargoes. The jury were to consider any and all uses to which the property could be appropriated profitably, and whether any use to which it could be put was too indefinite and prospective is largely within the discretion of the presiding judge. *Maynard* v. *Northampton,* 157 Mass. 218, 219.

It was held in *Pegler* v. *Hyde Park,* 176 Mass. 101, that evidence of the value of plants, flowers and the prepared soil used for greenhouses, and the amount of business transacted, was admissible. And where land with gravel beds was taken, evidence of not only the value of the unexcavated gravel but the cost of transportation, as well as of the market conditions of its supply and demand as merchandise, was said to be admissible in the discretion of the court. *Providence & Worcester Railroad* v. *Worcester,* 155 Mass. 35, 41. While loss of business or of good will in the absence of a statute so providing is not an element in the assessment of damages for the taking of property by right of eminent domain, the jury, when the evidence was introduced and later in the charge, were cautioned and instructed that the evidence was to be considered not as showing injury to the petitioner's business, but solely upon the question of the capacity of his property for the uses for which it was adapted and used at the date of the taking and as affecting its value for future use or improvement. *Chase* v. *Worcester,* 108 Mass. 60. *Bailey* v. *Boston & Providence Railroad,* 182 Mass. 537. *Whiting* v. *Commonwealth,* 196 Mass. 468. It was one way of showing the diminution in value of the property and for this purpose the evidence as limited was admitted properly. *Drury* v. *Midland Railroad,* 127 Mass. 571, 582.

The petitioner's appeal is dismissed and the respondent's exceptions are overruled.

*So ordered.*