McMORRAN *v.* CLEVELAND-CLIFFS IRON CO.

1. NUISANCE—FUEL DOCK.
   Fuel dock for purpose of supplying vessels with coal is not nuisance *per se.*

2. SAME—WHETHER FUEL DOCK NUISANCE DEPENDS ON OPERATION.
   Whether fuel dock is nuisance *per accidens* depends on showing that dust, noise, and vibration are more than merely incident to proper and skilful operation, considering vicinage.

3. SAME—HAMMERING ON STEEL CHUTES ENJOINED.
   Use of sledge hammer in dislodging clogged coal by hammering on steel chutes and bins in operating fuel dock was properly enjoined at instance of adjoining residents although district was not strictly residential.

4. SAME—OVERLAPPING WATERFRONT BY VESSELS NOT NUISANCE.
   That vessels at fuel dock, because of their length, overlap adjoining waterfront, constitutes no nuisance.

5. SAME—SMOKE FROM SMOKESTACKS OF VESSELS.
   Smoke from smokestacks of boats at fuel dock is but incident of navigation and may not be enjoined by residents.

6. SAME—NOISE—USE OF PROPER MACHINERY SKILFULLY MANAGED MAY NOT BE ENJOINED.
   Use of unloading machinery on vessel at fuel dock, if proper and managed with skill, may not be enjoined at instance of residents in vicinity, although noise therefrom interferes with their comfort and sleep.

7. EVIDENCE—JUDICIAL NOTICE—COAL DUST.
   It is common knowledge that coal cannot be handled without discharging dust.

8. NUISANCE—VIBRATION FROM VESSEL BEYOND INJUNCTIVE RESTRAINT.
   Vibration occasioned by vessels coming to fuel dock is but incident of navigation and beyond injunctive restraint.

As to whether nuisance resulting from smoke alone is subject to injunctive relief, see annotation in 39 L. R. A. 551; 6 A. L. R. 1575.

Appeal from St. Clair; Robertson (William), J. Submitted October 14, 1930. (Docket No. 78, Calendar No. 35,208.) Decided January 7, 1931.

Bill by David McMorran and others against Cleveland-Cliffs Iron Company, a foreign corporation, and Port Huron Coal & Dock Company, a Michigan corporation, to enjoin an alleged nuisance. Decree for plaintiffs. Defendants appeal. Affirmed in part, reversed in part.

*Avery & Covington,* for plaintiffs.

*Walsh, Walsh & O'Sullivan* (*Andrews & Belden,* of counsel), for defendants.

Wiest, J. Defendants appealed from a decree adjudging some. of the operations of their fueling dock on the St. Clair river in the city of Port Huron a nuisance.

For many years there has been maintained a fueling dock at the place in question, supplying vessels and other consumers with coal. Steamships have supplanted sailing vessels and this has created an increased demand for coal by vessels plying the Great Lakes. This demand has led to larger supplies of coal being unloaded at the dock from carrying vessels, the handling and storage thereof, the supplying of vessels therewith, and the installation of modern machinery and devices for speedy movement thereof. The coaling dock is favorably located for vessels delivering and taking on coal. At the time the fueling dock was located, and for years thereafter, the locality was but sparsely settled, and, even now, by reason of industries and railroad tracks, it cannot be termed a strictly residential district. The neighborhood of the dock, especially

along the river bank, has been built up for residence purposes to quite an extent, and several owners of near-by residences claim that smoke from vessels at the dock, coal dust arising from handling of the coal, and noise and vibration seriously injure their property rights and interfere with their enjoyment of their homes.

The circuit judge found:

"Adjoining defendants' property on the north are situated the power plant of the St. Clair Tunnel Company and the substation of the Detroit Edison Company. Immediately north of these plants are the depressed railroad tracks of the Pere Marquette Railroad. These tracks are also used by the Grand Trunk Railway, and lead into the freight and switching yards of these two railroads. The river front, east of Military street, from the substation of the Detroit Edison Company north to the mouth of Black river is used and occupied by railroad tracks, freight terminals, a small dry dock and other business enterprises. Military street north of defendants' property is largely occupied by high class residences for several blocks.

"The plaintiffs have either built or acquired their homes since the location of a coal yard and dock at this point and all knew of the existence of such business at this site at the time they bought or built their homes.

"The character of the business done at defendants' plant has changed from domestic trade and a comparatively small boat business, to one consisting almost exclusively of boat trade of rather large dimensions, and consequently the machinery and equipment has gradually changed from horse power to steam power until at present the plant is operated principally by electrical equipment.

"The defendant Cleveland Cliffs Company took possession of this coal business in 1926 and at once

began to improve its equipment and general condition. They have equipped their plant with the most modern, up-to-date machinery, operated by electricity, and have done and are doing everything they deem possible to lessen the annoyance to the neighborhood occasioned by dirt and noise. They have a large investment in this plant and are conducting a large and important business and one necessary to the vessel interests of the Great Lakes. This plant, designed for use as it is, must of necessity be upon the banks of the river St. Clair, and in order to economically and efficiently fulfil the requirements as designed, it must be equipped as it is, and now it ranks as one of the best on the Great Lakes.

"Some of the dust, smoke and soot complained of comes from boats passing up and down the river St. Clair, not connected with the business of these defendants; some from the manufacturing plants across the river and located in Sarnia, Ontario, and some from the passing of trains immediately to the north of and in close proximity to this neighborhood. * * *

"The cause of complaint is not that the coal yard and dock exists, but it is due to the fact that the business has increased to such an extent that it has necessitated larger, heavier and more powerful machinery to properly handle the greatly increased volume of coal and that this enlargement of the business has caused the annoyances complained of.

"The preponderance of evidence shows that since defendants have taken over the coal dock and yard, dust and noise have greatly increased."

The decree enjoined defendants from:

"1. Using a sledge hammer or other instrument in dislodging the clogged coal by hammering on the steel chutes and bins.

"2. Permitting boats to so lie at their dock as to extend in front of plaintiffs' property and allow

smoke from the smokestacks of said boats to enter plaintiffs' homes.

"3. Operating the unloading device of the steamer 'Fontana,' or any other steamboat, at said yard and dock, unless the same is in such repair so that it will not annoy plaintiffs and interfere with their comfort and sleep by reason of noise made by the machinery of said device.

"4. Making a disturbing noise by dropping coal from the elevating device into the bins and chutes.

"5. Permitting excessive dust to emanate from said yard and dock to the annoyance and discomfort of plaintiffs."

The fuel dock is not a nuisance *per se*. Whether it is a nuisance *per accidens* depends upon a showing that the dust, noise, and vibration are more than merely incident to the proper and skilful operation of the business. *Chesapeake, etc., R. Co.* v. *Scott,* 197 Ky. 636 (247 S. W. 735). The vicinage is an element to be considered. Persons who built residences in the vicinity of the established fueling dock can neither expect nor have the quiet and freedom from annoyances that they would have elsewhere.

When the fueling dock was installed due regard was had for the fitness of the location. It was not then an intrusion into an established residence district. But, even so, if plaintiffs afterward located their residences in the vicinity and chose to reside in close proximity thereto they are not deprived of all redress. They must submit to the dust, noise, and vibration incident to the proper and skilful operation of the business, but nothing more.

Counsel for defendants ask this question:

"May the courts of Michigan, on complaint of private citizens who have constructed homes since

the *establishment* of this fueling dock, treat the noise and dust resulting from proper operations of that dock in obtaining coal and in fueling vessels, as constituting a nuisance, and, in effect, enjoin the operation of the dock itself?''

And assert this answer:

''Any interference with the *reasonable* and *proper* operation of this fueling dock would be an obstruction to navigation and interstate commerce, and the regulation of interstate commerce is a subject reserved to the Federal government and is beyond the jurisdiction of the State courts.''

The question, so far as necessary, will be answered in the course of this opinion.

Plaintiffs do not ask that the fueling dock and business be abandoned, and the relief granted in the circuit does not abate the business unless it can be said that the regulations imposed reach such result.

Every judge appreciates the force of the following remarks of Justice Sharswood in *Wier's Appeal,* 74 Pa. St. 230, 241:

''The great difficulty in all cases of this character is not in the ascertainment of the true rule of equity, but in the application of that rule to the facts. While it may be easy to draw the line between what is and what is not a nuisance, which equity ought to enjoin, it is by no means so easy to determine whether the circumstances of any particular case ought to place it on one side or the other of that line. It is rare that any number of men will be found to agree in their judgment upon such a question. * * * There is a very marked distinction to be observed in reason and equity between the case of a business long established in a particular locality, which has become a nuisance from the growth of population and the erection of dwellings in prox-

imity to it, and that of a new erection threatened in such a vicinity."

In line with this see *Gilbert* v. *Showerman*, 23 Mich. 448.

1. We take up and will now consider the restraint imposed. The use of a sledge hammer in dislodging clogged coal has been discontinued. It is claimed that this practice was indulged by employees without authority, and, when noticed, was stopped. It should have been noticed earlier. It must remain stopped. The decree in this respect is affirmed.

2. Defendants' fueling dock is 445 feet long. Many vessels are longer. There is a strong current in the river and some vessels at the fueling dock, because of their length, overlap adjoining waterfront. This constitutes no nuisance. If such is an actionable trespass (a point we do not decide), the remedy is at law. On the subject see *Sherlock* v. *Bainbridge*, 41 Ind. 35, 46 (13 Am. Rep. 302); *Wellington* v. *Cambridge*, 214 Mass. 35 (100 N. E. 1096).

In *Pollock* v. *Cleveland Ship Building Co.*, 56 Ohio St. 655, 673 (47 N. E. 582), it was held:

"The mooring of vessels there, though they did overlap in front of plaintiff's land, did not constitute trespasses, and the plaintiff, under the facts found, has no standing in a court of equity to enjoin such use."

The damage, if any, occasioned by such overlapping is not common to all the plaintiffs.

Smoke from smokestacks of boats at the fueling dock is but an incident of navigation. Some of the boats are owned by defendants and others stop there to receive fuel. To restrain vessels engaged in navigation and interstate commerce from emit-

ting smoke at the dock, to the annoyance of plaintiffs, would not only interfere with rights of navigation but as well destroy the business carried on at the dock. In the course of navigation vessels may traverse any part of the river and the incident of smoke from their consumption of fuel, even though an annoyance to residents along the shore, justifies no injunction.

3. The steamer Fontana has been sold, and, it is said, will no longer carry coal to the dock. The decree, however, restrains defendants from operating the unloading device of any other steamboat unless the same is in such repair so that it will not annoy plaintiffs and interfere with their comfort and sleep by reason of noise made by the machinery. If the unloading machinery upon any vessel at the dock is proper and managed with skill, the use thereof may not be enjoined, even though the noise therefrom interferes with the comfort and sleep of plaintiffs.

4. Defendants have installed modern elevating appliances for unloading coal. It is true that the dropping of coal from the elevating devices in the bins and chutes occasions noise. Such noise is occasioned in the use of the most modern appliances and plaintiffs have not established improper equipment and lack of skill in operation.

5. Dust arising from the handling of coal. The coal is wet down before delivery at the dock, and coal upon the dock and hoisted to bins for delivery therefrom by chutes to vessels desiring to fuel cannot be wet down because it increases the weight of the coal, and this is not permissible. It is common knowledge that coal cannot be handled without discharging dust. Every housewife knows this. The decree restrained the emanation of "excessive dust," recognizing that some dust is inevitable.

We are unable to find that defendants in handling the coal are employing improper methods, or operating in an unskilful manner.

Plaintiffs also complained of vibration occasioned by vessels coming to the dock. This is but an incident of navigation and beyond injunctive restraint.

The decree restraining the use of sledge hammers is affirmed, and in all other respects reversed. Defendants will recover costs.

Butzel, C. J., and Clark, McDonald, Potter, Sharpe, North, and Fead, JJ., concurred.