BATES SAND & GRAVEL CO., INC. & another *vs.*
COMMONWEALTH.

Worcester.    April 11, 1979. — September 7, 1979.

Present: GRANT, PERRETTA, & KASS, JJ.

·*Real Property,* Profit à prendre. *Eminent Domain*, Damages, Profit à prendre. *Profit* à *Prendre.*

Under an agreement between a landowner and a corporation, which provided that for a five-year period, subject to termination after two years at the option of the landowner, the corporation would have the exclusive right to all the sand and gravel on the land against all others except the landowner's son with the reservation that the landowner had the right to enter upon and use her land for any purpose, the corporation possessed a profit à prendre in the land and thus had an interest compensable under G. L. c. 79, § 6. [333-335]

PETITION filed in the Superior Court on April 25, 1973.

The case was heard by *Donahue,* J.

*James F. Bergin* for Bates Sand & Gravel Co., Inc.

*Richard T. Tucker* for Hazel L. Sawyer.

PERRETTA, J. In 1973 Hazel L. Sawyer petitioned for an assessment of damages (G. L. c. 79, § 14) for land taken by

the Commonwealth in 1971 for a flood control project. Shortly after she filed her petition Bates Sand & Gravel Co., Inc. (Bates), moved to be made a party to the proceedings on the basis that it possessed mineral rights in the land and, therefore, had a compensable interest. The Commonwealth and Sawyer assented to the motion, and it was allowed. Thereafter, Sawyer challenged Bates' claim to an interest in her land, and both Bates and Sawyer agreed that the trial judge could determine Bates's claim of an interest on the sole basis of agreements and leases executed by them which they had introduced in evidence. Relying only on these exhibits, the judge ruled that Bates possessed a license, not an interest in realty, and that the license had been terminated by the taking. Bates challenges that ruling in this appeal. Sawyer argues in opposition, and the Commonwealth takes no position. The judgment is reversed.

The issue before us is whether the agreements between Bates and Sawyer conveyed rights to Bates which give rise to a claim under G. L. c. 79, § 6. That statute provides that when there is a taking by eminent domain "the damages sustained by every person in his property by reason of such taking" shall be awarded as compensation.

On October 1, 1970, Bates and Sawyer executed an agreement which provided that Bates could enter upon a specified parcel of Sawyer's land and remove sand, gravel, and stone in such quantity as it might desire. In addition to the consideration of "[o]ne [d]ollar and other valuable consideration," Bates was to pay Sawyer each month at a set rate per cubic yard or short ton for all the sand it had removed the preceding month. Paragraph 5 of the agreement stated that Bates held "exclusive" rights in that "Sawyer will not grant to anyone else the privilege of removing sand and stone from said parcel during the period hereof . . . but Sawyer reserves to herself her successors and assigns, the right during the said period . . . to go on and use said tract of land for any purpose they may desire, but without unreasonable interference with

the rights of said Bates." The term of the agreement was from the date of its execution until October 1, 1975, and its provisions were also to apply to any extension of that period. Approximately ten weeks later, on December 18, 1970, the parties executed an "Agreement and Lease" which made no reference to the agreement of October 1 but which was identical to it in purpose and substantially the same in its language. The second agreement, however, contained the following two changes. While the period of this agreement was the same as the first, it could now be terminated "on December 31, 1972, at the personal option of Sawyer." Also, paragraph 5 of this second agreement reserved "the express right by Lawrence Sawyer [Sawyer's son] to remove therefrom sand, gravel, stone or other earth materials, as he may require the same in carrying out his usual occupation as a contractor as heretofore exercised." The second agreement contained no recital that it superseded the first, but that is not here important, because they are not in conflict and because our result would be the same under either of the two agreements.

By the terms of the agreements Bates had exclusive right to all the sand and gravel against all others except Sawyer's son. In addition, Sawyer reserved the right to enter upon and use her land for any purpose. Bates' rights were to continue until December 31, 1972, and if Sawyer should not affirmatively terminate the agreement on that date, these rights were to continue for another three years.

We conclude that Bates possessed a profit à prendre, which has been described as "involv[ing] primarily a power to acquire, by severance or removal from another's land, some thing or things previously constituting a part of the land, or appertaining thereto, the holder of the profit a prendre having, as an integral part thereof, rights against the members of the community generally that they shall not interfere with the exercise or enjoyment of the power." 3 Tiffany, Real Property § 839 (3d ed.

1939). See also *Gray* v. *Handy*, 349 Mass. 438, 441 (1965); Restatement of Property § 450, Comment f (1944). The provisions in the agreement that Sawyer could enter upon the tract for any purpose and that her son could also take earth materials from that tract do not convert the profit into a license. Sawyer conveyed a profit to Bates, and her reservations of like use do not constitute an interference with Bates' exercise or enjoyment of its right which is sufficient to defeat that right. A profit à prendre may be held in gross (*Rehoboth* v. *Hunt*, 1 Pick. 224, 228-229 [1822]; *Munn* v. *Stone*, 4 Cush. 146, 147-148 [1849]; Tiffany, *supra* at § 843), and it need not be exclusive. *Stockbridge Iron Co.* v. *Cone Iron Works*, 102 Mass. 80, 82-83 (1869). *Stockbridge Iron Co.* v. *Hudson Iron Co.*, 107 Mass. 290, 322 (1871). Tiffany, *supra* at §§ 839, 844, 846.

As the holder of a profit à prendre Bates possessed an interest in the land[1] (*Rehoboth* v. *Hunt, supra* at 228; *Arnold* v. *Stevens*, 24 Pick. 106, 108-109 [1839]; *Gray* v. *Handy, supra* at 441-442; see *Carville* v. *Commonwealth*, 192 Mass. 570, 571-572 (1906); cf. *First Natl. Bank* v. *Konner*, 373 Mass. 463 [1977]; 2 Nichols, Eminent Domain § 5.72[7], [rev. 3d ed. 1976]), and its loss is compensable under G. L. c. 79, § 6, but only as an interest in the land. See *Joseph DeVries & Sons* v. *Commonwealth*, 339 Mass. 663, 664 (1959). Bates should have been allowed to proceed to prove the fair market value of its interest in the land (*Providence & Worcester R. R.* v. *Worcester*, 155 Mass. 35, 41 [1891]), i.e., the value of the sand as it lay undisturbed. *Manning* v. *Lowell*, 173 Mass. 100, 102-103

---

[1] The cases Sawyer relies upon in urging that we conclude to the contrary are readily distinguishable. They involve rights to standing timber, and such rights have long been recognized in this Commonwealth as merely rights to the felled trees as personalty coupled with a license to enter and remove the timber. *Drake* v. *Wells*, 11 Allen 141, 142-143 (1865). *Fletcher* v. *Livingston*, 153 Mass. 388, 390 (1891). *Hanifin* v. *C & R Constr. Co.*, 313 Mass. 651, 658 (1943). Tiffany, *supra* at § 840.

(1899). *Pegler* v. *Hyde Park,* 176 Mass. 101, 102 (1900). *Consolini* v. *Commonwealth,* 346 Mass. 501, 502 (1963). See *Wellington* v. *Cambridge,* 220 Mass. 312, 318 (1915). Cf. *Correia* v. *New Bedford Redevelopment Authy.,* 375 Mass. 360 (1978).

The judgment as to Bates is reversed, and the matter is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*